William ROSS, Appellant,

v.

Scott Farrell GOLDSTEIN, as Independent Administrator of the Estate of John David Green, Deceased, Appellee.

No. 14–05–00405–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Sept. 14, 2006.

Jerry Wayne Simoneaux Jr., Houston, for appellants.

John B. Geddie, Gerald Scott Siegmyer, Houston, for appellees.

Panel consists of Justices HUDSON, FOWLER, and SEYMORE.

### OPINION

WANDA McKEE FOWLER, Justice.

Scott Goldstein, as independent administrator of his father's estate, brought suit against William Ross to recover certain assets Goldstein believed were in Ross's possession, but belonged in the decedent's estate. Ross counterclaimed raising five causes of action: (1) conversion; (2) request for declaratory judgment that the assets were jointly acquired; (3) breach of fiduciary duty; (4) request for a constructive trust; and (5) request that the trial court adopt a novel equitable remedy, the "marriage-like relationship" doctrine. Goldstein responded with three special exceptions to the claims of fiduciary duty, constructive trust, and equitable remedy. The trial court granted all three special exceptions and allowed Ross the opportunity to replead. Ross refused to replead, deciding to stand on his pleadings. The trial court then dismissed the entire counterclaim, held a trial on plaintiff's claims, and awarded Ross some property, though not all to which he believed himself entitled. Ross appeals the trial court's rulings on the special exceptions, its decision to strike the entire pleading even though not

entirely specially excepted to, and urges this court to adopt the "marriage-like relationship" doctrine. We will affirm in part, and reverse and remand in part.

## Factual and Procedural Background

In 1995, William Ross met John Green. At the time, Ross was a hairdresser earning between five and ten thousand dollars a year. The two began a romantic relationship and eventually Ross moved into Green's home. Ross soon ceased working as a hairdresser, and relied solely on income paid to Green. However, Ross contended that he and Green both worked together at a consignment shop to earn money, and that it was shared money, even though paid only to Green.

Ross testified that when he moved into Green's home, Green had little in the way of furnishings or decorations. However, during their relationship, the two accumulated furnishings and various items. Also, Ross sold his personal vehicle and the two used those proceeds, in addition to money earned from the consignment shop, to purchase a 1998 Ford Mustang. Although the Mustang title was originally in Green's name, he authorized Ross to transfer title to Ross's name as a Christmas present. Otherwise, Ross owned no property in his own name or purchased with money from his separate bank account—all bills were paid and items purchased from Green's separate bank account. Ross testified that he signed Green's name on checks and credit accounts throughout their relationship.

On December 10, 2002, Green was admitted to a facility because he had "mis-used prescription drugs, [and was] making poor decisions, making off-the-wall decisions." Green had also been diagnosed previously as bipolar and suffering from chemical dependency. When he was admitted, he asked one of the admitting nurses, who was also a notary, to witness and notarize a quitclaim deed for property Green owned in Katy, Texas.[1] The quitclaim deed purported to transfer ownership of the property, with a taxable value of approximately $60,000, to Ross. However, Green allegedly told Ross not to file the deed unless Green died. On December 16, Green was released from the hospital. Green subsequently died January 11, 2003.

Following Green's death, Ross filed the quitclaim deed, and continued to sign checks with Green's name and utilize Green's charge accounts. He then called Green's estranged son, Scott Goldstein.[2] Goldstein, who lives in Florida, flew to Texas and began to evaluate his father's estate. He told Ross that Ross could remain in the dwelling while he wound up the estate, though Ross evidently did not accept this offer. Goldstein was appointed independent administrator of his father's estate. Following what Ross described Green's wishes to be, Goldstein arranged and paid for a memorial service, and Green's cremation and sprinkling of ashes over Biscayne Bay. He then began to marshal the assets of the estate.

One of Goldstein's acts as independent administrator was the filing of a lawsuit against Ross. Goldstein sought to retrieve various items such as furniture and paintings acquired with Green's money, but allegedly held by Ross. Ross counterclaimed,

---

1. The notary testified by affidavit that she could not produce any records regarding this notarization because her records from that period of time had been stolen from her car. However, the deed produced did have the appropriate signatures and seal.

2. Goldstein is one of Green's three children. Goldstein changed his last name to that of his stepfather, but was never legally adopted. Therefore, he is one of Green's intestate heirs.

alleging that he and Green had a marriage-like relationship, had embarked on a joint venture in the consignment business, and thus had acquired the sought-after assets together and owned them jointly.

Goldstein specially excepted to three of Ross's five counterclaims. The trial court allowed Ross time to replead, but Ross refused to replead, and instead stood on his pleadings. The trial court then dismissed the entire counterclaim and held a bench trial on Goldstein's petition alone. Following the bench trial, the trial court awarded the Mustang to Ross, but granted the majority of relief Goldstein sought.[3] Ross appealed, alleging that the trial court erroneously granted the special exceptions, and erred in striking the entire counterclaim, and asserting that we should adopt the "marriage-like relationship" doctrine. Because the trial court erred by granting relief which was not requested, we reverse and remand as to the declaratory judgment and conversion causes of action. However, we hold that the trial court correctly granted the other special exceptions, including the refusal to recognize the "marriage-like relationship" doctrine, and affirm those portions of the judgment.

## Analysis

### I. Standard of Review

Special exceptions are a means of questioning the legal sufficiency of a plaintiff's petition. *Melendez v. Exxon Corp.*, 998 S.W.2d 266, 272 (Tex.App.-Houston [14th Dist.] 1999, no pet.). To properly present a special exception, the party must identify the particular pleading excepted to, and do so "intelligibly and with particularity." TEX.R. CIV. P. 91. General demurrers are not acceptable. TEX.R. CIV. P. 90. We review a trial court's ruling on

special exceptions for abuse of discretion. *Melendez*, 998 S.W.2d at 272. If the court has acted without reference to guiding rules and principles, then it has abused its discretion. *Id.* at 273. On appeal, we accept as true all material factual allegations and all factual statements reasonably inferred from the allegations set forth in the excepted to pleadings. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 240 (Tex.1994). We liberally construe pleadings because special exceptions are only a challenge to determine if the "fair notice" requirements of pleadings have been met. *See Wortham v. Dow Chem. Co.*, 179 S.W.3d 189, 198–99 (Tex.App.-Houston [14th Dist.] 2005, no pet.). If by examining the plaintiff's pleadings alone, we may ascertain with reasonable certainty the elements of a cause of action and the relief sought, the pleading is sufficient. *Id.* at 198.

In addition to challenging the legal sufficiency of a pleading, a special exception is also appropriate to challenge a pleading for failing to allege a cause of action recognized in Texas. *See Trevino v. Ortega*, 969 S.W.2d 950, 951–52 (Tex.1998) (upholding granted special exception on basis that cause of action did not exist in Texas). Therefore, if the pleading was deficient in setting out the elements or relief sought, or the cause of action asserted is not recognized in Texas, the trial court does not abuse its discretion in granting the exception. The party against whom exceptions were granted must then be granted an opportunity to replead. *Cruz v. Morris*, 877 S.W.2d 45, 48 (Tex. App.-Houston [14th Dist.] 1994, no writ). A party may refuse to amend and appeal the exceptions. *Melendez*, 998 S.W.2d at 272. If the remaining portions of the pleading fail to state a cause of action, the trial court may dismiss the suit. *Cruz*, 877

---

**3.** The trial court found that the quitclaim deed was not valid because Green lacked testamentary capacity at the time of execution, and there was lack of consideration.

S.W.2d at 47. Otherwise, the remaining causes of action may proceed.

## II. Surviving Causes of Action

 Goldstein requested certain relief below, namely, special exceptions to three of five causes of action. However, the trial court granted relief in excess of that requested. While a trial court may dismiss an entire pleading on proper motion if, without the excepted portions, the pleading fails to state a cause of action, such was not the case here. Without the excepted portions, Ross's counterclaim stated two causes of action that had not been excepted or challenged through some other procedural vehicle. Whether the claims are meritorious or not, the trial court was not presented with any procedural vehicle with which to strike those causes of action. Therefore, we hold that the trial court could not dismiss the declaratory judgment and conversion causes of action on its own motion.

 To argue there is no harm, Goldstein contends that the issues raised in the declaratory judgment and conversion causes of action were tried through appellee's suit. His argument can be read to state that, so long as the basic facts and arguments were made, there is no harm here because the trial court heard all of Ross's evidence on shared assets when Ross presented defensive evidence against Goldstein's suit. We disagree the issue is so easily answered. Goldstein's argument requires considerable assumptions. Those assumptions are that Ross presented his case as defendant exactly as he would have as a counterclaimant, and that the trial court could and would have granted the requested relief, even though there were no live pleadings requesting the relief Ross sought. If we indulged these assumptions, there would no longer be any viable rule requiring that trial courts give only relief requested, and only when the proper procedural vehicles are employed. We reverse the trial court's decision to dismiss the entirety of Ross's counterclaim, and remand for consideration of his declaratory judgment and conversion claims.

## III. Special Exceptions Properly Granted for Fiduciary and Confidential Relationship Claims

Ross raised two different, but related claims—breach of fiduciary duty and a request for a constructive trust. Goldstein filed special exceptions arguing first that there were "no allegations of fact giving rise to any sort of relationship between Goldstein and Ross," and second that there were no allegations of fraud necessary to receive the remedy of constructive trust. Ross responded with sufficient factual allegations of a confidential relationship between Green and Ross, but none concerning Goldstein and Ross. Additionally, Ross explained that an informal confidential relationship is a proper basis for the imposition of a constructive trust.

 Ross did not below, and does not on appeal, explain how his confidential relationship with Green is imputed to Goldstein. Therefore, his pleading was insufficient. Ross's counterclaim was against Goldstein, as independent administrator of Green's estate. Yet he pled no facts of any confidential relationship that has ever existed between himself and Goldstein. Without any allegations of such facts in his petition, or explanation of how Green's relationship with Ross is somehow imputed to Goldstein, Ross's pleadings on both of these issues were, and remain, legally insufficient. Ross has not pled sufficient facts, even liberally construed, to support his allegations. We affirm the trial court as to these two special exceptions.

## IV. Marriage–Like Relationship Doctrine

In his final request for relief, Ross urges us to adopt the "marriage-like relationship" doctrine. Arguing it is an equitable remedy not against the public policy of the State, Ross contends this doctrine will aid the courts in addressing the growing reality of same-sex relationships. We disagree with Ross's position. Texas has determined that same-sex couples must address their particular desires through other legal vehicles such as contracts or testamentary transfers. *See* Tex. H.R.J. Res. 6, § 2, 79th Leg., R.S. (2005) ("This state recognizes that through the designation of guardians, the appointment of agents, and the use of private contracts, persons may adequately and properly appoint guardians and arrange rights relating to hospital visitation, property, and the entitlement to proceeds of life insurance policies without the existence of any legal status identical or similar to marriage.").

Ross does not argue that he is constitutionally entitled to the remedy he seeks. He does argue, however, that his proposed equitable remedy is proper to address a reality of life for same-sex couples, and that it is not against this State's public policy. There are two democratically approved statements of Texas's public policy to guide our course on this question. The first is Texas Family Code section 6.204, which states that it is contrary to the State's public policy to recognize or give effect to a same-sex marriage or civil union. Tex. Fam.Code § 6.204. The second, and weightier, is Article 1, section 32 of the Texas Constitution, which states that marriage is between one man and one woman only and no state or political subdivision of this State may create or recognize any legal status identical or similar to marriage. Tex. Const. art. I, § 32. Our State's public policy is unambiguous, clear, and controlling on the question of creating a new equitable remedy akin to marriage: we may not create such a remedy.

We affirm the trial court's grant of a special exception as to the request for the equitable remedy.

## Conclusion

Having determined that the trial court erroneously dismissed two causes of action to which Goldstein did not specially except, yet also having determined that the trial court was otherwise correct in its rulings on the special exceptions, we affirm in part and reverse and remand in part. We affirm the trial court's rulings granting special exceptions, but reverse and remand the ruling dismissing the declaratory judgment and conversion causes of action. Those were improperly dismissed as Goldstein did not specially except to them or otherwise seek to have them dismissed.