**Affirmed and Opinion filed April 4, 2013.**



In The

# Fourteenth Court of Appeals

## NO. 14-11-01108-CV

**WARREN ALDOUS AND MICHAEL ALDOUS, Appellants**

**V.**

**ERIC BRUSS, Appellee**

**On Appeal from the 405th District Court**
**Galveston County, Texas**
**Trial Court Cause No. 09-CV-0104**

## O P I N I O N

In this defamation case, appellant Warren Aldous challenges the trial court's partial summary judgment on liability entered against him on deemed admissions and the legal and factual sufficiency of the evidence to support the damages award to appellee Eric Bruss after a contested hearing. Appellant Michael Aldous asserts that (1) the trial court erred by denying his motion for new trial in which he alleged the discovery of new evidence, (2) the trial court erroneously denied his special

exceptions to Bruss's petition, and (3) the allegedly defamatory statements he made were protected by an absolute or qualified privilege. We affirm the trial court's judgments.[1]

## BACKGROUND

Eric Bruss, a police officer with the Santa Fe, Texas, police department, sued Michael Aldous for defamation in January 2009. In his petition, he made the following allegations. Around February 2008, he arrested Michael for driving while intoxicated ("DWI"). Later that year, Michael's father, Warren Aldous, was arrested by another officer from the Santa Fe police department for a traffic offense. After Warren's arrest, Michael began to "repeatedly make and publish false statements regarding [Bruss]'s professional reputation. [Michael] also repeatedly and publicly falsely accused [Bruss] of numerous criminal offenses." Michael also published numerous false statements via email and on the internet.

Bruss asserted that these defamatory statements constituted slander per se, directly attacked his professional reputation, tended to impeach his "honesty, integrity, virtue, or reputation," and were made with malice. He further contended that Michael had intentionally published numerous false statements and had falsely accused him of crimes. Bruss claimed that, as a direct and proximate result of Michael's false and defamatory statements, he had endured shame, public embarrassment, public humiliation, and mental pain and anguish in the past and would continue to suffer in the future. He sought both actual and exemplary damages, pre- and post-judgment interest, and costs of suit. In September 2009, Bruss amended his petition to add Warren as a defendant, alleging that both

---

[1] The "final" judgment against Warren Aldous was signed on March 4, 2011, awarding Bruss $150,000.00 in damages. This judgment became final and appealable when the judgment against Michael Aldous was signed on July 22, 2011 because Bruss had sued both Warren and Michael. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 203–04 (Tex. 2001).

2

Michael and Warren engaged in the conduct described above.[2]  Because the procedural facts between the proceedings against Warren and Michael diverge, we will first confine our discussion to the trial proceedings against Michael and then discuss the summary-judgment proceedings against Warren.

## A.    Trial Proceedings Against Michael[3]

In his February 2010 no-evidence motion for summary judgment, Michael asserted that there was no evidence of his having intentionally published any false statements.  His assertion that all the statements at issue were true was based on their having been taken from news broadcasts and licensed attorneys.  He further contended that any statement he published that was not a statement of fact was an expression of opinion, which was not actionable.  Finally, he argued that Bruss had failed to prove that he had made any statements with any knowledge that they were false.  In his response, Bruss asserted, among other things, that discovery was still on-going and would not be completed until June 14, 2010, based on the court's Discovery and Docket Control Order.  The trial court denied Michael's summary-judgment motion on April 15, 2010.

Two weeks after his summary-judgment motion was denied, Michael filed special exceptions to Bruss's petition.  Michael asserted that Bruss's allegations were so general that he did not have fair notice of the claim against him.  He further complained that Bruss had failed to describe any specific statements that were made to defame Bruss, when any such statements were made, where these

---

[2] The record reflects that Warren was served with this petition by certified mail on September 10, 2009.  Warren answered on April 26, 2010, generally denying the allegations in Bruss's petition.

[3] Michael has not challenged the sufficiency of the evidence, so we discuss the facts of the case briefly here and as necessary throughout the opinion to the disposition of his appellate issues.  *See* Tex. R. App. P. 47.1.

statements were made, or which such published statements were false. Michael specially excepted that Bruss's "entire petition does not contain a single statement that was allegedly made by [Michael] that allegedly constitutes slander per se." Michael requested that Bruss state the maximum amount of his alleged damages. He asked that the court sustain his exceptions and order Bruss to replead.

In his response to the special exceptions, Bruss claimed that he was not required to plead all the factual details of his case in his pleadings. He stated that he would amend his pleading to state his actual damages.[4] The trial court denied Michael's special exceptions on June 1, 2010.

A jury trial on Bruss's defamation claim against Michael was held from May 25 to June 2, 2011. Michael, a lawyer, represented himself. The trial centered around an incident that had occurred at a gas station and involved Michael, his father, Warren, the owners/operators of a towing company called "Peanuts," and Bruss. During this incident, Michael apparently made at least one 911 call. Bruss's patrol unit camera also recorded this incident. The audio of the 911 call(s) and the video from Bruss's patrol unit were admitted into evidence. Michael also filed complaints with the Santa Fe police department regarding Bruss's actions during this incident.[5] During trial, Michael moved for a directed verdict, asserting that Bruss had failed to prove his damages and that, as a police officer, he should have "thicker skin." The trial court denied this motion. After both sides closed, the following bench conference occurred:

---

[4] Our record contains no such amended petition.

[5] Michael lodged evidentiary objections to the admission of the audio of the 911 calls, the video from Bruss's patrol car, and the complaints he filed with the police department. These evidentiary objections were overruled by the trial court.

4

THE COURT:  Let the record reflect we're outside the presence of the jury.  Mr. Krieger [Bruss's counsel], have you received a copy of the Court's charge?

MR. KRIEGER:  I have.

THE COURT:  Do you have any objections to the Court's charge?

MR. KRIEGER:  No, your Honor.

THE COURT:  Mr. [Michael] Aldous, have you received a copy of the Court's charge?

MR. ALDOUS:  Yes, your Honor.

THE COURT:  Do you have any objections to [the] Court's charge?

MR. ALDOUS:  No, you Honor.

In the charge, the jury was provided with thirty-seven specific statements Michael was alleged to have made regarding Bruss.  The jury found that (1) Michael had published thirty-six of the thirty-seven statements and (2) Michael knew that twenty-five of these statements were defamatory and false at the time they were made.  Of these twenty-five statements, the jury found that each of the following five statements proximately caused Bruss $7,500.00 in damages for injury to his reputation sustained in the past and $7,500.00 in damages for injury to reputation that, in reasonable probability, Bruss will sustain in the future.  These statements were:

> "Bruss left the scene and the Peanut's towing gentlemen waited for me outside the store and eventually his wife talked him into leaving."
>
> "I have been going to city council against this officer that's here and there are his buddies that go spy on the city council meetings cause we just got out of because the city is about to fire the officer and so me and my dad are afraid to leave they have our car blocked in with ah…with ah..police car."
>
> "The officers sitting here watching the guy say he's going to kick my ass….taking his shirt off."
>
> "Eric Bruss is here and he's just sitting there watching."

5

> "Bring me another one of your complaint forms because Bruss stood here and watched the whole thing happen and didn't do a thing about it."

Thus, in total, the jury awarded Bruss $75,000.00 for injury to his reputation sustained in his past and injury that Bruss will, with reasonable probability, sustain in the future.

On June 15, Michael filed a motion for mistrial, in which he challenged the jury's damages award, asserted that the charge was confusing, contended that certain witnesses failed to appear at trial despite proper subpoenas, explained that he had discovered new evidence, complained of improper interaction between Bruss and a member of the jury, stated that the jury may have been intimidated because the venire information sheets were left with the parties, and contended that the jury instructions were "altered and changed after being presented to the jury." This motion was denied on July 22, the same day on which the trial court signed a judgment awarding Bruss $75,000.00 in accord with the jury's verdict.

Michael filed a motion for new trial on August 19, 2009, asserting the discovery of new evidence. In this motion, Michael identified new evidence that had come to light since trial and could not have been discovered earlier through any diligence on his part. Michael described this evidence and attached a purported recording from a witness who, although subpoenaed, did not testify at trial. He stated that this evidence contradicted statements made by Bruss during trial. He attached police reports from the owners and operators of Peanuts towing company that he had not been provided prior to trial. In the motion, Michael identified several witnesses who he asserted would contradict Bruss's testimony and undermine Bruss's credibility, as well as a witness who would undermine the testimony of Bruss's ex-wife. However, Michael attached no supporting affidavits

6

to his motion for new trial. The trial court denied Michael's motion for new trial on September 9, 2011. His appeal timely ensued thereafter.

## B.      Summary-Judgment Proceedings Against Warren

On February 10, 2010, Bruss moved for partial summary judgment as to Warren. In this motion, Bruss asserted that Warren had not responded to his request for admissions, which had been served on December 19, 2009. Bruss asserted that Warren had therefore admitted to the following:

- Bruss properly named Warren in his petition.
- Warren made defamatory statements about Bruss.
- Warren made remarks accusing Bruss of criminal acts.
- Warren made false defamatory remarks about Bruss.
- Warren slandered Bruss.
- Warren made false statements accusing Bruss of criminal acts.
- Warren made remarks that harm Bruss's business reputation.
- Warren made remarks that injured Bruss's office, profession, or occupation.
- Warren made remarks that harmed Bruss.
- Warren made remarks that harmed Bruss's office, profession, or occupation.
- Warren made defamatory statements against Bruss with actual malice.
- Bruss is entitled to damages related to the suit.
- Bruss is entitled to nominal damages related to this suit
- Bruss is entitled to special damages related to this suit.

On February 12, 2010, Warren's deposition was taken. Warren filed a general denial on April 26, 2010, three weeks after the trial court denied his motion to quash service of process on April 5. The trial court granted Bruss's motion for

7

partial summary judgment as to liability against Warren on May 14, 2010.[6]  The trial court set a hearing on damages for June 25, 2010.

Due to various delays,[7] the hearing on damages was not held until February 23, 2011.  Warren was represented by counsel at this contested hearing.  Bruss and his ex-wife, Sylvia Sandoval were the only testifying witnesses at the hearing.

During the testimony at this hearing, Bruss testified as follows.  He had previously had a good reputation within the law enforcement community.  After Bruss arrested Michael for DWI, Warren and Michael appeared at Santa Fe city council meetings to defame him, filed false complaints against him with the Santa Fe police department, posted false statements about him on the internet, and sent numerous defamatory emails to law enforcement agencies, public officials, and websites.  Bruss applied for jobs with other police departments that would have been career advancements for him, but withdrew his applications because of the ongoing defamation by Warren and Michael.  At the time of the hearing, Bruss had been subject to Warren's slander and lies for "probably two years."  Warren and Michael made a video about Bruss that was sent to the Texas Rangers, several members of congress, and the judiciary.  This conduct by the Aldouses affected Bruss's work performance and reputation, as well as his personal life, his relationship with his now ex-wife, and his relationships with his children.  Bruss was required to undergo counseling following an officer-involved shooting unrelated to this case.  During this counseling for that incident, he spent a majority of the time dealing with stress induced by the ongoing harassment caused by the

---

[6] Warren attempted appeal of this interlocutory summary judgment was dismissed by this court for want of jurisdiction on July 29, 2010. *See Aldous v. Bruss*, No. 14-10-00539-CV, 2010 WL 2968587, at *1 (Tex. App.—Houston [14th Dist.] July 29, 2010, no pet.) (mem. op.) (per curiam).

[7] Warren notified the trial court that he had removed his suit to federal court on June 23, 2010.  The case was remanded back to the trial court on August 17, 2010.

Aldouses and their publication of false and defamatory statements about him. On cross-examination, Bruss admitted that he did not lose his employment or have any reduction in his salary as a result of Warren's defamatory statements. He stated, however, that he believed his job to have been in jeopardy for some time when the Aldouses first began their defamatory campaign against him.

Sylvia Sandoval testified to the following. She is a police officer who works for the City of Webster, Texas. She has known and lived with Bruss since 2000; they married in 2007. The Aldouses' defamation of Bruss led to their divorce. She observed Bruss as visibly depressed, unable to engage romantically, and unable to participate in family activities because of the stress caused by the Aldouses' conduct. She had been concerned that Bruss would commit suicide. She saw that Bruss was ridiculed at work by coworkers because of Warren's defamatory statements, and Bruss had difficulty speaking with citizens due to the Aldouses' ongoing campaign against him. Bruss's problems manifested only after the Aldouses began their pattern of attacks on him. Because of the Aldouses' behavior, she became concerned for the safety of their children and instructed them to call 911 if they ever saw the Aldouses. In her experience, she had never seen this type of attack on a police officer.

After hearing the evidence and argument of counsel, the trial court took the matter under advisement. On March 7, 2011, the trial court signed a judgment awarding Bruss general damages of $150,000.00 against Warren. Warren filed a *Craddock*[8] motion for new trial on April 6, 2011, seeking to set aside the "default judgment" rendered against him. The trial court denied Warren's motion on May 5, 2011. The judgment against Warren became final and appealable when the

---

[8] *See Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. 1939).

judgment against Michael was signed, as noted above, on July 22, 2011. Warren's appeal timely ensued thereafter. Although Warren and Michael filed separate appellate briefs, their cases were never severed, so we address them both in this opinion.

## ANALYSIS

### A. Issues Relating to Michael's Appeal

Michael presents three issues for our review. First, he asserts that the trial court abused its discretion by failing to set aside the judgment against him and granting a new trial. In his second issue, he complains that the trial court erred in denying his special exceptions to Bruss's petition. Finally, in issue three, he contends that the award for damages for defamation is void because the alleged defamatory statements were made under absolute or qualified privilege on a 911 call and in a police complaint packet requesting commencement of a criminal investigation against an officer for his misconduct while on duty.

#### 1. *Denial of Motion for New Trial*

The grounds for Michael's motion for new trial were newly discovered evidence. A party seeking a new trial on such grounds establish that (1) the evidence has come to his knowledge since the trial, (2) the failure the discover the evidence sooner was not due to a lack of diligence, (3) the evidence is not cumulative, and (4) the evidence is so material it would probably result in a different outcome if a new trial were granted. *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 813 (Tex. 2010). We review the denial of such a motion for an abuse of discretion. *Id.* Every reasonable presumption will be made in favor of a trial court's order refusing a new trial. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809–

10

10 (Tex. 1983), *overruled on other grounds by Moritz v. Preiss*, 121 S.W.3d 715 (Tex. 2003).

Michael asserts that his "newly discovered evidence" consists of information obtained during a hearing before the Santa Fe Public Safety Committee from Debra O'Connor, a witness he had subpoenad to testify at his trial. O'Connor failed to appear at his trial. In his brief, Michael claims, with no record support, that the trial court "would not compel Debra O'Connor to appear because a witness fee was not attached to the trial subpoena." Michael contends that the witness fee attached to his previously served deposition notice to Debra O'Connor "should cover the witness fee for the trial subpoena." Michael contends that he issued another trial subpoena with a witness fee attached, which was served upon O'Connor, but she failed to appear, and the trial court refused to compel her appearance. There is no record support for the trial court's refusal to compel the appearance of this witness.[9]

In conclusory fashion, Michael asserts that the "statements" provided by O'Connor were not cumulative as to any evidence introduced at trial and that they "led to the discovery of an incident report and two other witnesses that would have changed the outcome of the trial." He provides no meaningful discussion of his efforts to discover any of this "evidence" or how this "evidence" would likely have changed the outcome of his trial. Indeed, he neither explains nor identifies what this "evidence" is in his appellate brief. *See* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."); Moreover, his motion for new trial had no affidavits attached from any of these witnesses indicating what

---

[9] The subpoena reflects that it was served *after* the time the witness was to appear at court and contains a hand-written notation that Ms. O'Connor was "with her husband in the hospital."

11

their testimony would be or an affidavit from Michael establishing his diligence in discovering this "evidence."[10] *Cf. Bell v. Showa Denko K.K.*, 899 S.W.2d 749, 757 (Tex. App.—Amarillo 1995, writ denied) (stating that a movant's mere allegations will not suffice to obtain a new trial on the basis of newly discovered evidence).

In short, Michael has not established that the trial court abused its discretion in denying his motion for new trial. Not only did he fail to provide the trial court with anything more than mere allegations rather than any evidence, he neglects to identify his new evidence on appeal. For the foregoing reasons, we overrule his first issue.

### 2. Denial of Special Exceptions

In his second issue, Michael challenges the trial court's denial of his special exceptions. A defendant challenges the legal sufficiency of a plaintiff's petition through special exceptions. *Ross v. Goldstein*, 203 S.W.3d 508, 512 (Tex. App.—Houston [14th Dist.] no pet.). To properly present a special exception, the

---

[10] One of the exhibits attached to Michael's motion for new trial appears to be an investigative response to Michael's complaint regarding Bruss and Peanut's Towing Company. It appears to be written on Santa Fe Police Department letterhead and signed by interim police chief K. Campbell. At the top, it lists the following under "Investigators Findings": "Peanuts Wrecker Sustained; Sgt. Eric Bruss Exonerated. The body of the letter, addressed to Michael Aldous, contains the following paragraphs specifically regarding Bruss and Michael's statements in his complaint and 911 calls:

> I further assigned your complaint . . . to Lieutenant Meadows who conducted a thorough investigation of the incident [at the West End Shell Station on September 25, 2008]. Said investigation to include video documentation *does not support Sgt. Bruss failing to act, rather it does support Sgt. Bruss acting in a professional manner while de-escalating a negative situation.*
>
> *I must also make you aware that there are several discrepancies in your own complaint which are not supported by video evidence. There are also discrepancies in your 911 call regarding the incident which are not supported by video evidence.* I share these concerns with you because there are state law penalties regarding false reports and/or false statements.

(emphasis added).

12

defendant must identify the particular pleading excepted to, and do so "intelligibly and with particularity." Tex. R. Civ. P. 91. General demurrers are not acceptable. Tex. R. Civ. P. 90. We review a trial court's ruling on special exceptions for an abuse of discretion. *Ross*, 203 S.W.3d at 512. We liberally construe pleadings; special exceptions are only a challenge to determine if "fair notice" requirements have been met. *Id.*

In his special exceptions to Bruss's petition, Michael complained that Bruss failed to set out enough factual details regarding his claim. It is not a valid objection to generally complain that the pleading does not set out enough factual details if fair notice of the claim is given. *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 616–17 (Tex. 2004). The only specific omission identified in Michael's special exception is the following statement: "The pleadings for the alleged slander in paragraph II, do not plead all the elements necessary to support slander per se because Plaintiff omitted the element of actually pleading an alleged defamatory statement." This aversion is contradicted by Bruss's petition, in which he pleaded:

> [T]he Defendants began to repeatedly make and publish false statements regarding the Plaintiff's professional reputation. *The Defendants also repeatedly and publicly falsely accused the Plaintiff of numerous criminal offenses.* The Defendants have published a number of false statements via email, regular mail, orally, in writing, and on the internet. . . .
>
> These defamatory statements constitute slander per se. *The statements falsely accuse the Plaintiff of a crime and directly attack the professional reputation of the Plaintiff.* Further, the statements tend to impeach the Plaintiff's honesty, integrity, virtue, or reputation. The Defendants' statements were made with malice. The Defendants have intentionally published numerous false statements to the public and *falsely accused the Plaintiff of crimes*. . . .

(emphasis added). Michael has not explained how these allegations fail to sufficiently place him on notice that Bruss was suing him for defamation per se (falsely accusing Bruss of crimes and attacking his professional reputation as a police officer)[11] or cited a single authority for the proposition that Bruss was required to notify him of the specific statement(s) alleged to have been defamatory per se. In fact, his special exception is more in the nature of an unacceptable general demurrer. *See* Tex. R. Civ. P. 90. Thus, we cannot say the trial court abused its discretion in denying Michael's special exceptions.[12] Accordingly, we overrule Michael's second issue.

---

[11] An oral statement is defamatory per se if it falls within one of the following categories: (1) imputation of a crime; (2) imputation of a loathsome disease; (3) injury to a person's office, business, profession, or calling, or (4) imputation of sexual misconduct. *Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[12] Michael also complained that Bruss had not specified his maximum damages. Further, during trial, he made an oral motion for directed verdict, as follows:

> Thus far in this case I feel the Plaintiffs [sic] have failed to present their case -- failed to prove their case. They [sic] have things that -- there's things that have to be proven up in this case in accordance with the law. They [sic] failed to prove up their damages.
>
> The Plaintiff is, as you know, a police officer, which they're -- they're supposed to have a little bit of a thicker shell or thicker skin, so to speak. They have to have more than a mere loss of sleep to recover for a defamation case. In this case I don't see where they've [sic] established damages in any way, shape or form. I don't see what statements have been alleged that actually are defamatory that I've made. Every statement that has been made was made -- was made based on a truth. It was based on statements made by other individuals and nothing has been made to -- in an obvious attempt to harm the Plaintiff's reputation, your Honor.

The only similarity between this oral motion for directed verdict and Michael's prior-filed special exceptions is his complaint regarding damages. It appears that Michael was under the impression that Bruss was required to allege and prove both the existence and amount of damages. However, this is so only if Bruss were alleging defamation *per quod*, which requires both proof of the existence and the amount of damages. *See Exxon Mobil Corp. v. Hines*, 252 S.W.3d 496, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). But in cases involving defamation per se, "damages are presumed to flow from the nature of the defamation itself; thus, such an action can be sustained even without specific proof of the existence and amount of harm." *Id.* Once a jury finds that a defendant made a statement that is defamatory per se, the

### 3. *"Privileged" Statements*

In his third issue, Michael asserts that the statements for which Bruss was awarded damages were made under an absolute or qualified privilege because they were made in a 911 phone call or a complaint package he filed with the Santa Fe police department. He contends that these type of statements are related to judicial proceedings and are absolutely privileged. Thus, he contends that none of these statements can support an award of damages for defamation.

The issue of whether an alleged defamatory matter is related to a proposed or existing judicial proceeding is a legal question to be determined by the court. *Randolph v. Walker*, 29 S.W.3d 271, 278 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Communications subject to this privilege "cannot constitute the basis of a civil action" and may not form a basis for civil liability. *See Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942); *Randolph*, 29 S.W.3d at 278.

We disagree with Michael that any of his communications were made under an absolute privilege. Rather, we conclude that his communications were made under a qualified privilege. Such qualified or conditional privileges arise out of the occasion upon which the false statement is published and do not rise to the level of an immunity. *Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 768 (Tex. 1987). Initial communications to a "public officer . . . who is authorized or privileged to take action" are subject to only a qualified privilege, not absolute immunity. *Id.*; *see also Clark v. Jenkins*, 248 S.W.3d 418, 432 (Tex. App.—Amarillo 2008, pet. denied). Even the filing of a criminal complaint is not absolutely privileged

---

factfinder may presume the statement injured the plaintiff's reputation. *See Downing*, 348 S.W.3d at 424. Because Michael alleged defamation per se, he was not required to allege or prove a specific amount of damages. *Id.*

because, at that point, judicial proceedings have not begun, and no investigating body has discovered sufficient information to present to a grand jury or file a complaint. *Clark*, 248 S.W.3d at 432 (citing *San Antonio Credit Union v. O'Connor*, 115 S.W.3d 82, 99 (Tex. App.—San Antonio 2003, pet. denied)). We conclude that Michael's statements, allegedly made during a 911 call or in a complaint filed with Bruss's employer, the Santa Fe police department, are subject only to a qualified or conditional privilege. *Cf. id.*

Michael has failed to establish whether any sort of privilege even applies to the statements he made. The only record reference to the statements in his brief is to the jury charge, which does not identify the source of these statements. Appellant states in his brief that these statements were made in a 911 call and a complaint packet, but there is no record support for this allegation. A party asserting error on appeal bears the burden of showing that the record supports the contention raised and of specifying the place in the record where matters upon which he relies or of which he complains are shown. *See* Tex. R. App. P. 38.1(i); *Franz v. Katy Indep. Sch. Dist.*, 35 S.W.3d 749, 754 (Tex. App.—Houston [1st Dist.] 2000, no pet.).

Moreover, Michael has not directed us to, and we have not found, any location in the record where he raised the issue of qualified privilege with the trial court,[13] either as an affirmative defense,[14] or otherwise.[15] *See* Tex. R. App. P.

---

[13] When these exhibits were admitted, Michael lodged only evidentiary objections to their admission.

[14] Generally, one must plead the affirmative defense of qualified privilege. *E.g.*, *Thomas-Smith v. Mackin*, 238 S.W.3d 503, 509 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (stating that defendant was entitled to jury question on qualified privilege because she pleaded it as an affirmative defense).

[15] We reviewed Michael's answer, summary-judgment motion, his oral motion for directed verdict, the charge conference, his motion for mistrial, and his motion for new trial. He did not raise the issue of qualified or conditional privilege—or absolute privilege—in any of

33.1(a) (requiring that, generally, to present a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion). Under these circumstances, Michael has both waived this issue by failing to properly brief it and failed to preserve it by presenting it to the trial court. We therefore overrule his third and final issue.

## B.    Warren's Appellate Issues

Warren challenges the trial court's partial summary judgment on liability in favor of Bruss in his first issue. In his second issue, he asserts that the trial court's award of $150,000.00 in damages to Bruss following a contested hearing is excessive.

### 1.    Partial Summary Judgment in Favor of Bruss

Warren filed a *Craddock*[16] motion for new trial following the trial court's partial summary judgment on liability in favor of Bruss. "*Craddock* does not apply to a motion for new trial filed after judgment has been granted on a summary-judgment motion to which the nonmovant failed to timely respond when the movant had an opportunity to seek a continuance or obtain permission to file a late response." *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 686 (Tex. 2002). Here, it is unclear whether Warren was aware that the motion for summary judgment had been filed or that a response was due before the partial summary judgment was granted.[17] Thus, in an abundance of caution, we will apply the

---

these documents in the clerk's record or locations in the reporter's record.

[16] *Craddock*, 133 S.W.2d at 126.

[17] As discussed below, it is apparent that his counsel was aware that discovery responses were outstanding.

17

*Craddock* standard in evaluating his motion for new trial, even though a default judgment was not granted against him.[18]

We review a trial court's refusal to grant a new trial for an abuse of discretion. *Dolgencorp of Tex., Inc. v. Lerma*, 288 S.W.3d 922, 926 (Tex. 2009) (per curiam). A trial court is required to set aside a default judgment and grant a new trial if (1) the defendant's failure to answer before judgment was not intentional or the result of conscious indifference on his part, but was due to a mistake or accident, (2) the motion sets up a meritorious defense, and (3) granting the motion will "occasion no delay" or otherwise injure the plaintiff. *Sutherland v. Spencer*, 376 S.W.3d 752, 755 (Tex. 2012) (quoting *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124, 126 (Tex. Com. App. 1939)). If a defaulting parting moving for new trial meets the *Craddock* test, a trial court abuses its discretion by failing to grant a new trial. *Id.*

We look to the knowledge and acts of the defendant to determine whether he satisfied his burden regarding the first *Craddock* element. *Dir., State Emp. Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 269 (Tex. 1994). But when a party relies on a representative to file an answer or respond, the party must establish that the failure to answer or respond was not intentional or the result of conscious indifference of either the party or the representative. *See Est. of Pollack v. McMurrey*, 858 S.W.2d 388, 391 (Tex. 1993); *Ferguson & Co. v. Roll*, 776 S.W.2d 692, 698 (Tex. App.—Dallas 1989, no writ). Conscious indifference is generally interpreted to mean a failure to take some action that would seem indicated to a person of reasonable sensibilities under the same circumstances. *See Prince v. Prince*, 912 S.W.2d 367, 370 (Tex. App.—Houston [14th Dist.] 1995, no

---

[18] In *Ivy v. Carrell*, the Supreme Court of Texas extended *Craddock* to post-answer default judgments. 407 S.W.2d 212, 213 (Tex. 1996).

writ) (quoting *Johnson v. Edmonds*, 712 S.W.2d 651, 652–53 (Tex. App.—Fort Worth 1986, no writ); *Todd v. Heinrich*, No. 01-10-00267-CV, 2011 WL 2183881, at *6 (Tex. App.—Houston [1st Dist.] June 2, 2011, no pet.) (mem. op.) (quoting *In re A.P.P.*, 74 S.W.3d 570, 573 (Tex. App.—Corpus Christi 2002, no pet.).

In his affidavit, Warren states:

> When I was served with the lawsuit, I hired my daughter-in-law, Meghan Aldous, to represent my interest. . . .
>
> I first learned of the discovery that was not answered after the motion for default was granted. I was never told by my lawyer that discovery was outstanding, nor was I told that there was a hearing scheduled on the default judgment. . . .
>
> When I learned that there was outstanding discovery, I asked my lawyer what happened – she said she just missed it. I asked her to file a responsive document (motion for the court to reconsider and to explain what occurred) and to answer the discovery – she did neither.

These statements in Warren's affidavit indicate that his failure to respond to these discovery requests resulted from his representative's conscious indifference. *See, e.g.*, *Fiske v. Fiske*, No. 01-03-00048-CV, 2004 WL 1847368, at *7 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.) (holding that agent's inaction after opposing counsel informed her of possible default judgment constituted conscious indifference); *cf. First Nat'l Bank v. Peterson*, 709 S.W.2d 276, 279-80 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (equating conscious indifference with inaction resulting from alleged ignorance); *Johnson v. Edmonds*, 712 S.W.2d 651, 652–53 (Tex. App.—Fort Worth 1986, no writ) (holding that appellant's failure to seek help or advice or make inquiries about import of "papers" he received constituted conscious indifference). Accordingly,

we conclude that the trial court did not abuse its discretion in denying his motion for new trial based on *Craddock*.[19] We therefore overrule his first issue.

## 2. *Damages*

The trial court conducted a contested hearing on damages in which both Bruss and his ex-wife, Sylvia Sandoval, testified. On appeal, he challenges the legal and factual sufficiency of the evidence to support the trial court's general damages award of $150,000.00. To determine whether the evidence is legally sufficient to support the judgment, we review the entire record, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We assume that the finder of fact decided questions of credibility or conflicting evidence in favor of the verdict if it reasonably could do so. *Id.* at 819, 820. If the evidence would enable reasonable and fair-minded people to differ in their conclusions, then it is legally sufficient to support the verdict. *Id.* at 822. Under a factual sufficiency review, we consider and weigh all of the evidence in the record, overturning the verdict only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *See Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996).

Bruss sued Warren for defamation per se. As is relevant to our analysis of the propriety of the trial court's damages award, Warren admitted to making false statements accusing Bruss of criminal acts and injury to his office, profession, and

---

[19] Warren did not seek to withdraw his deemed admissions in his motion for new trial, and he has he not sought to withdraw them on appeal. *Cf. Wheeler v. Green*, 157 S.W.3d 439, 442 (Tex. 2005) (holding that an appellant preserved appellate review of whether her deemed admissions should have been the basis for summary judgment without filing motion to withdraw deemed admissions by filing a motion for new trial in which arguments and requests made put trial court on notice of her claim that she should not have been deemed to have made admissions based on failure to timely respond to request for admissions).

occupation. These type of statements fall within the categories of statements that are defamatory per se. *See Downing v. Burns*, 348 S.W.3d 415, 424 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (defamatory per se statements include those imputing a crime and those that cause injury to a person's office, business, or profession, among others). When a factfinder determines that the defendant made the allegedly defamatory statement about the plaintiff, and the statement is defamatory per se, then the factfinder may presume that the statement injured the plaintiff's reputation. *Id.* (citing *Bentley v. Bunton*, 94 S.W.3d 561, 604 (Tex. 2002)). In such a case, the plaintiff is entitled to recover general damages, such as for loss of reputation. *See id.*

In granting Bruss's partial summary judgment, the trial court ruled that Warren made these defamatory per se statements as a matter of law. Because these statements were defamatory per se, general damages are presumed. *Id.* (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex. 1984) (op. on reh'g)). The amount to award for harm to the plaintiff's reputation lies within the factfinder's discretion. *See id.* "At a minimum, the plaintiff is entitled to a nominal sum, but is not limited to that amount, and the [factfinder] may choose to award damages that are 'substantial.'" *Id.* (quoting *W. Tex. Utils. Co. v. Wills*, 164 S.W.2d 405, 408 (Tex. Civ. App.—Austin 1942, no writ)). Warren also admitted that he made these defamatory statements with malice.

At the hearing on damages, both Bruss and his ex-wife testified that his long-term relationship with his wife and children had deteriorated, and his marriage ended in divorce. Bruss testified that the defamatory statements affected his work performance, his reputation, and his personal life. He stated that when he was required to undergo counseling for an unrelated event, he spent the majority of the counseling session(s) discussing the impact the Aldouses' behavior had had on

his life. Sandoval testified that Bruss was visibly depressed, unable to engage romantically, and could not participate in family activities. She further expressed concern that he would commit suicide. Both Bruss and Sandoval attributed the end of their marriage to Warren's and Michael's pattern of defamation.

After reviewing the evidence presented in this case, we conclude that reasonable and fair-minded people could have determined that $150,000.00 would be a sufficient amount to compensate Bruss for the injury to his reputation caused by Warren's defamatory statements. Further, this damages award is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Cf. Knox v. Taylor*, 992 S.W.2d 40, 49, 60 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (concluding that $750,000 in damages awarded for injury to reputation in defamation per se case was not excessive); *see also Adolf Coors Co. v. Rodriguez*, 780 S.W.2d 477, 488 (Tex. App.—Corpus Christi 1989, writ denied) (noting that under presumption of damages applicable to libel per se, damages "are within the jury's discretion, are purely personal, and cannot be measured by any fixed rule or standard"); *Bradbury v. Scott*, 788 S.W.2d 31, 39 (Tex. App.—Houston [1st Dist.] 1989, writ denied) (holding, in case of libel per se, "where the amount of the actual damages is not capable of definite ascertainment, and prima facie liability is established, the determination of the amount is necessarily lodged in the discretion of the jury"); *Freeman v. Schwenker*, 73 S.W.2d 609, 611 (Tex. Civ. App.—Austin 1934, no writ) (same). Accordingly, we conclude that the evidence is both legally and factually sufficient to support the trial court's damages award. We overrule Warren's second and final issue.

# CONCLUSION

We have overruled each of Michael's three appellate issues. We thus affirm the trial court's judgment against Michael. Likewise, having overruled Warren's two issues on appeal, we affirm the trial court's judgment against him.

_____
Adele Hedges
Chief Justice

Panel consists of Chief Justice Hedges and Justices Boyce and Donovan.