

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

April 29, 2013

The Honorable Dan Patrick
Chair, Committee on Education
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-1003

Re: Whether the Texas Constitution prevents local political subdivisions from recognizing domestic partnerships by granting benefits previously only available to married couples (RQ-1097-GA)

Dear Senator Patrick:

You inquire about certain Texas cities, counties, and school districts that "offer some form of insurance benefits to domestic partnerships" as part of their employee benefits programs.[1] You ask whether article I, section 32 of the Texas Constitution "preclude[s] political subdivisions of Texas from providing so-called domestic partnership benefits to their employees." Request Letter at 2. Specifically, you inquire about article I, subsection 32(b), which provides that "[t]his state or a political subdivision of this state may not create or recognize any legal status identical or similar to marriage." TEX. CONST. art. I, § 32(b).

The purpose of an Attorney General opinion is to attempt to determine how Texas courts would rule on the legal question presented by the opinion request. As the Texas Supreme Court has explained, when courts interpret a constitutional provision, the principal goal is to "ascertain and give effect to the plain . . . language of the framers of a constitutional amendment and of the people who adopted it." *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 466 (Tex. 2011). Courts must "presume the language of the Constitution was carefully selected, interpret words as they are generally understood, and rely heavily on the literal text." *Id.* Finally, the Texas Supreme Court has instructed that "it is inappropriate to resort to rules of construction or extrinsic aids" when the constitutional provision at issue is clear and unambiguous. *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008).

The Houston Court of Appeals has ruled that article I, subsection 32(b)'s prohibition on the creation or recognition of a legal status similar to marriage is "unambiguous, clear, and controlling." *Ross v. Goldstein*, 203 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2006,

---

[1]Letter from Honorable Dan Patrick, Chair, Senate Educ. Comm., to Honorable Greg Abbott, Tex. Att'y Gen. at 2 (Nov. 2, 2012), http://www.texasattorneygeneral.gov/opin ("Request Letter").

no pet.).    That being the case, the constitutional text itself is controlling and it would be "inappropriate" to consult outside authorities or rules of construction.

To answer your question, we must first determine whether article I, subsection 32(b) applies to Texas cities, counties, and school districts.  By its plain language, article I, subsection 32(b) applies to "[t]his state or a political subdivision of this state."  TEX. CONST. art. I, § 32(b). The entities you describe—cities, counties and independent school districts—are all political subdivisions as a matter of Texas law.  *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 58 (Tex. 2011).  Thus, the plain text of the Texas Constitution makes the entities about which you inquire subject to article I, section 32.

Having first concluded that article I, section 32 applies to cities, counties, and school districts, we now address whether the political subdivisions about which you ask have violated the constitution by creating or recognizing a "legal status identical or similar to marriage."  *See* TEX. CONST. art XI, § 5(a) (no local entities' ordinances "shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State").  On this question, we divide our analysis into two parts.  First, we must determine whether these political subdivisions have created or recognized a "legal status."  If they have, we must then consider whether that legal status is "identical or similar to marriage."

The question whether the political subdivisions have created or recognized a "legal status" is informed by the fact that the domestic partnerships at issue are not created or recognized under state law.  While Texas law uses the term "domestic partnership" to describe a type of business entity, no Texas statute establishes or recognizes a domestic partnership as it is described in your request or in the briefing submitted to this office.[2]  Thus, the domestic partnerships about which you inquire are entirely a creation of the relevant political subdivisions. By creating domestic partnerships and offering health benefits based on them, the political subdivisions have created and recognized something not established by Texas law.  The question remains whether the status created by the political subdivisions constitutes a "legal status" for purposes of the constitution.

Briefing received by this office contends that the provision of health benefits, standing alone, does not constitute the creation or recognition of a legal status.[3]  However, the domestic partnership benefits programs in question do not simply confer healthcare benefits on a new class

---

[2]The term "domestic partnership" is used in the unrelated business context throughout the Business Organizations Code, but such references are not applicable here.  *See* TEX. BUS. ORGS. CODE ANN. § 1.002(17), (63)(B), (67) (West 2012) (defining "domestic" and "partnership" for purposes of the Business Organizations Code and using the terms together to identify certain types of entities).

[3]Brief from Jo Anne Bernal, El Paso Cnty. Att'y at 8 (Jan. 7, 2013); Brief from Karen Kennard, Austin City Att'y at 9 (Jan. 10, 2013); Brief from James P. Allison, Gen. Counsel, Cnty. Judges & Comm'rs Ass'n of Tex. at 3 (Dec. 6, 2012); Brief from Joey Moore, Gen. Counsel, Tex. State Teachers Ass'n at 2 (Dec. 12, 2012) (briefs on file with Op. Comm.).

of individuals.   Instead, these political subdivisions have elected to establish a series of requirements that an individual must satisfy in order to be considered a domestic partner by the political subdivision.  For example, each of the political subdivisions referenced in your request letter requires applicants to execute an affidavit swearing that they satisfy the political subdivision's domestic partnership criteria.[4]  Further, applicants for domestic partnership status must provide supporting documentation as necessary.  Only if domestic partnership status is obtained through this process do the political subdivisions confer health insurance benefits upon their employees' domestic partners.  Thus, the political subdivisions have defined the criteria for the creation of a domestic partnership and established a legal process that must be followed in order for that status to gain recognition from the political subdivision.

In a related context, in the case of *Ross v. Goldstein*, a Texas court of appeals was urged to adopt a "marriage-like relationship doctrine" as an equitable remedy for the surviving partner of a same-sex couple.  203 S.W.3d at 514.  Declining to do so, the court emphasized that article I, section 32 is clear, and as a result, a court "may not create such a remedy" because it is foreclosed by the Texas Constitution.  *Id.*   In the context of your inquiry, the political subdivisions in question have created an even more formal legal status than the equitable remedy rejected by the court of appeals in *Ross v. Goldstein.*  By establishing eligibility criteria and requiring affidavits and other legal documentation to demonstrate applicants' eligibility to be considered domestic partners, these political subdivisions have purported to create a legal status of domestic partnership that is not otherwise recognized under Texas law.  Furthermore, the political subdivisions "recognize" that legal status by providing benefits to individuals who attain that status.[5]

We next address whether the domestic partnership legal status created by the political subdivisions is "similar to marriage" and therefore not permitted by the Texas Constitution. TEX. CONST. art. I, § 32(b).  While the Texas Constitution does not define "similar," the courts of this state have explained that the common meaning of "similar" is "having a likeness or

---

[4]*See* Letter from Sylvia Borunda Firth, El Paso City Att'y, Exhibit B (Dec. 6, 2012) (City of El Paso Domestic P'ship Affidavit) (on file with Op. Comm.); City of Fort Worth, Affidavit of Domestic P'ship, http://fortworthtexas.gov/uploadedFiles/Human_Resources/Employee_Information/Benefit_Information/Domestic% 20Partnership%20Affidavits.pdf; City of Austin, Domestic P'ship Affidavit & Agreement, http://www.austintexas .gov/sites/default/files/files/Employment/DomesticPartnerAffidavitAgreement.pdf; City of San Antonio, Domestic P'ship Affidavit & Agreement, http://www.sanantonio.gov/hr/employee_information/benefits/pdf/DOMESTIC_ PARTNER_ENROLLMENT%20PACKET.pdf; El Paso County, Affidavit of Domestic P'ship, http://home .elpasotexas.gov/human-resources/risk-managment/documents/health/DomesticPartnerAffidavit.pdf; Travis Cnty., Declaration of Domestic P'ship, http://www.traviscountyclerk.org/eclerk/content/images/pdf_tc_rec_Declaration_ of_Domestic_Partnership.pdf; Pflugerville Indep. Sch. Dist., Affidavit of Domestic P'ship, http://cms.pflugervilleisd .net/cms/lib/TX01001527/Centricity/Domain/93/Domestic%20Partnership%20Affidavit.pdf (last visited Apr. 18, 2013).

[5]We need not determine whether providing health benefits, standing alone, might create or recognize a legal status in contravention of article I, section 32, because the political subdivisions in question have gone well beyond the mere provision of health benefits.

resemblance" and having "characteristics" in common. *Prudholm v. State*, 333 S.W.3d 590, 594 (Tex. Crim. App. 2011) (citing THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1782 (2d ed. 1987)); Tex. Att'y Gen. Op. No. H-1129 (1978) at 4. The term "domestic partnership" is commonly understood to mean "a relationship that an employer or governmental entity recognizes as equivalent to marriage for the purpose of extending employee-partner benefits otherwise reserved for the spouses of employees." BLACK'S LAW DICTIONARY 558 (9th ed. 2009); *see Traxler v. Entergy Gulf States, Inc.*, 376 S.W.3d 742, 747 (Tex. 2012) (resorting to the same dictionary to determine the common meaning of a term).

The political subdivisions referenced in your request letter have each established slightly different criteria to determine whether applicants qualify for domestic partnership status. A commonality among all of the political subdivisions, however, is that they use criteria usually associated with marriage. For example, the Family Code prohibits a county clerk from issuing a marriage license to a person who is presently married, related to the other applicant within a certain degree of consanguinity, or under 18 years of age except in limited circumstances. TEX. FAM. CODE ANN. §§ 2.004(b)(5)–(6), .009(b), .101 (West 2006 & Supp. 2012). Similarly, every political subdivision that you reference requires that applicants for domestic partnership status attest that prior undissolved marriages, consanguinity, and age would not operate to preclude them from marrying under state law.[6] Thus, the domestic partnership criteria established by these political subdivisions have various characteristics in common with the criteria for marriage, and the domestic partnership status resembles marriage in these respects. Applying the ordinary definition of "similar," a court is likely to conclude that the domestic partnership legal status about which you inquire is "similar to marriage" and therefore barred by article I, section 32 of the Texas Constitution.

Briefs we received in response to your request suggest that the legislative debate on article I, section 32 in the Texas House of Representatives reflects a "clear legislative intent" to the contrary.[7] Representative Chisum, the author of the constitutional amendment, stated the following on the House floor:

> This amendment to the Constitution would not negate or set aside any contract that an employer wanted to make with his employee. . . . It does not change what a city might do. It just says that they won't recognize anything that creates the same legal status identical to or similar to marriage. It does not stop them from providing health benefits to same-sex partners. It is not intended to do that.

---

[6]*See* sources cited *supra* note 4.

[7]Letter from Scott Houston, Deputy Exec. Dir. & Gen. Counsel, Tex. Mun. League at 2 (Dec. 17, 2012); *see also* Letter from Karen Kennard, City Att'y, City of Austin at 5 (Jan. 10, 2013) (briefs on file with Op. Comm.).

Debate on Tex. H.R.J. Res. 6 on the Floor of the House, 79th Leg., R.S. (Apr. 25, 2005) (tape available through Office of the House Comm. Coordinator). Representative Chisum's statement simply explains that article I, section 32 does not, in his view, address whether a political subdivision may provide health benefits to the unmarried partner of an employee. The constitutional provision does, however, explicitly prohibit a political subdivision from creating or recognizing a legal status identical or similar to marriage. The political subdivisions you ask about have not simply provided health benefits to the partners of their employees. Instead, they have elected to create a domestic partnership status that is similar to marriage. Further, they have recognized that status by making it the sole basis on which health benefits may be conferred on the domestic partners of employees.

As other briefing submitted to this office observed, the United States Supreme Court has granted certiorari in two cases addressing state and federal laws that define marriage as it is defined in article I, section 32 of the Texas Constitution. *See Windsor v. United States*, 699 F.3d 169, 187–88 (2d Cir. 2012), *cert. granted*, 81 U.S.L.W. 3333 (U.S. Dec. 11, 2012) (No. 12-307) (addressing the federal Defense of Marriage Act); *Perry v. Brown*, 671 F.3d 1052, 1067–68 (9th Cir. 2012), *cert. granted*, *Hollingsworth v. Perry*, 81 U.S.L.W. 3075 (U.S. Dec. 7, 2012) (No. 12-144) (addressing California's constitutional amendment defining marriage). The Supreme Court heard argument in these cases on March 26 and 27, 2013 and will likely render a decision before the Court's current term ends in June of this year. Those cases involve issues of federal constitutional law that are beyond the scope of your question about the meaning of the Texas Constitution. Depending on the outcome of those cases, however, the Court's decision could call into question the enforceability of article I, section 32 under the United States Constitution.

## S U M M A R Y

Article I, section 32 of the Texas Constitution prohibits political subdivisions from creating a legal status of domestic partnership and recognizing that status by offering public benefits based upon it.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

Virginia K. Hoelscher
Assistant Attorney General, Opinion Committee