

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00229-CV

———————————————

EVAN MCSHIRLEY AND D'ANN DAGEN, Appellants

V.

LEILANI LUCAS, Appellee

On Appeal from County Court at Law No. 1
Parker County, Texas
Trial Court No. CIV-23-0047

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Birdwell

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, Appellants Evan McShirley and D'Ann Dagen (the McShirleys)[1] challenge the trial court's denial of their motion to dismiss pursuant to the Texas Citizens Participation Act[2] (TCPA), in which they sought to dismiss the claims filed against them by Appellee Leilani Lucas: defamation,[3] intentional infliction of emotional distress (IIED), malicious prosecution, negligence, gross negligence, and conspiracy. Applying the TCPA's standards, we affirm the trial court's order as it concerns Lucas's defamation, malicious-prosecution, and conspiracy claims; reverse and render judgment dismissing Lucas's IIED, negligence, and gross negligence claims; and remand this matter to the trial court for further proceedings consistent with this opinion.

## I. Background

On February 8, 2022, McShirley and Lucas engaged in a conversation at a homeowners' association (HOA) meeting. The parties dispute what happened during that conversation. McShirley asserts that Lucas, a former HOA board member and officer, "shouted an obscene statement at [him] and struck [him] on both shoulders,

[1]McShirley and Dagen are husband and wife and are referred to, collectively, as "the McShirleys."

[2]Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011.

[3]Lucas asserted a claim for slander and slander per se. *See Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 623 (Tex. 2018) ("Defamation may occur through slander[,] . . . [which] is a defamatory statement expressed orally.").

immediately causing pain." Lucas denies that she assaulted or touched McShirley and asserts that the conversation was "civil." Following the alleged assault, McShirley filed a criminal complaint against Lucas with the Parker County Sheriff's Department for "striking and injuring" him. A probable-cause warrant was issued for Lucas's arrest, and on March 29, 2022, she was arrested and charged with the offense of injury to an elderly individual, a third-degree felony. *See* Tex. Penal Code Ann. § 22.04(a)(3), (f). However, the State ultimately decided not to pursue prosecution stemming from Lucas's arrest.

On March 27, 2022, the HOA board held a special meeting to address "formal complaints" against the McShirleys and another board member and "Director"— April Wiechmann—among others. During the meeting, Dagen—also a board member and "Director"—urged the board to recuse Lucas from participating in or voting on the complaints against the McShirleys' and Wiechmann's households, to censure Lucas on the record, and to recommend Lucas's removal from the HOA board at the next membership meeting. Dagen read a "Statement for the Recusal & Censuring of Director Lani Lucas," in which she noted the pending felony-assault charge against Lucas and told the board members that "the most alarming cause for censure [was Lucas's] recent verbal and physical assault of Evan McShirley," a "quite serious"

3

charge.[4] This statement was then filed with the HOA's secretary and, according to Lucas, "distributed to the community at large."

Lucas filed her lawsuit against the McShirleys in January 2023. She claimed that because of "a bitter HOA dispute," the McShirleys had conspired to remove her from the HOA board by accusing her of committing a felony, which would disqualify her from serving on the board, and by causing her to "lose favor" among the residents of the HOA. The McShirleys answered and filed their TCPA motion to dismiss, asserting that Lucas's claims were based on or in response to the McShirleys' exercise of their right of free speech, right to petition, and right of association. In support of the motion, the McShirleys attached Lucas's original petition and the Declaration of Evan McShirley, which repeated the assault allegations and stated that McShirley had sought medical treatment for his injuries before filing his criminal complaint against Lucas.

In response to the McShirleys' motion, Lucas argued that the TCPA did not apply to her claims and that, even if it did, she had demonstrated a prima facie case regarding the essential elements of her causes of action. Lucas attached her own affidavit in support of the response, as well as Dagen's statement to the HOA board at the March 27, 2022 special meeting, the probable-cause warrant for Lucas's arrest, a

---

[4]Dagen also asserted that Lucas had erroneously filed with the HOA insurer a claim regarding the alleged assault, along with claims of other alleged violations of the HOA's governing documents. However, Lucas did not complain of these statements in her pleadings or in her response to the McShirleys' TCPA motion to dismiss, and she only briefly mentions the statements in her appellate brief.

Consolidated Complaint and Probable Cause Affidavit, the State's letter of nonprosecution, and affidavits from three witnesses—Mike Snyder, Susan Loftis, and Lori Muhr—who were present during the conversation between McShirley and Lucas at the HOA meeting on February 8, 2022. Snyder, Loftis, and Muhr attested that they did not observe any "offensive touching," "violence," or "signs of a dispute" between McShirley and Lucas on February 8, 2022. Snyder and Loftis stated that McShirley had not exhibited any signs of distress, irritation, or anger consistent with an offensive touching; rather, he appeared to have been "entirely normal and calm."

Although initially turned away from McShirley and Lucas, Snyder at some point turned and approached them, speaking with McShirley while he and Lucas were still talking; McShirley relayed that he and Lucas had been discussing ideas to "bring the community back together." Snyder continued talking to McShirley after Lucas left the conversation. According to Snyder, McShirley did not indicate to him that he and Lucas had had any "disagreeable words."

Muhr identified herself as a "retired medical professional" who is "required to report" observable injuries. She stated that while she had observed a conversation between McShirley and Lucas, she did not observe any injuries. She claimed that she had seen McShirley and Lucas "part on friendly terms." Moreover, Muhr asserted that two days after the February 8, 2022 HOA meeting—when Lucas allegedly injured McShirley—she saw McShirley "working at the pool," holding a heavy, wrought-iron fence over his head.

Muhr also attested that she had recently served a demand letter on both the HOA and her next-door neighbor, HOA "Director" Wiechmann, about Wiechmann's noncompliant driveway. In turn, Wiechmann—who served on the board alongside Dagen—filed a criminal complaint against Muhr with the Parker County Sheriff's Office alleging "criminal trespass." According to Muhr, Wiechmann was "one of the primary people behind" a particular group of board members who had been "employing the tactic of filing charges against board members to gain control of the board." She did not identify the McShirleys as part of this group, but in Dagen's statement to the board, she alluded to "the complaint against [her] household and the complaint against . . . Wiechmann's household." Additionally, Dagen specifically identified a group of board members—Wiechmann, Jill Paul, Larry Short, and herself, among others—against whom Lucas allegedly had "a seemingly apparent agenda of discrediting" and "bullying." In other words, Dagen's statement to the board appears to have identified a particular group of board members in opposition to Lucas's place on the board.

Notably, the McShirleys did not deny these allegations or the witnesses' observations.

In their reply, the McShirleys argued that the TCPA applied to Lucas's claims and that she had failed to establish by clear and specific evidence a prima facie case for each essential element of her claims. In a subsequent supplemental motion to dismiss, the McShirleys argued that McShirley's statements to the police were

6

qualifiedly privileged, which required Lucas to establish that the McShirleys had acted with actual malice. After hearing the McShirleys' TCPA motion and Lucas's response, the trial court denied the motion in its entirety. This interlocutory appeal followed.

## II. The TCPA

The TCPA is commonly known as the Texas Anti-SLAPP statute, referring to Strategic Lawsuits Against Public Participation. *Bookout v. Shelley*, No. 02-22-00055-CV, 2022 WL 17173526, at *10 (Tex. App.—Fort Worth Nov. 23, 2022, no pet.) (mem. op.). Its purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002; *see In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding). To effectuate this purpose, the TCPA provides "an expedited procedure for the early dismissal of groundless legal actions that impinge on First Amendment rights." *Greer v. Abraham*, 489 S.W.3d 440, 442 (Tex. 2016).

A motion to dismiss filed pursuant to the TCPA invokes a three-step, burden-shifting analysis: (1) the party invoking the TCPA must demonstrate that a "legal action" has been brought against it that is "based on or is in response to" an exercise of the constitutional rights of free speech, petition, or association; (2) if the moving party successfully invokes the TCPA, "[t]he court may not dismiss [the] legal action . . . if the party bringing the legal action establishes by clear and specific

evidence a prima facie case for each essential element of the claim in question"; and (3) if the nonmoving party carries its burden, the case may still be dismissed "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b)–(d); *Bookout*, 2022 WL 17173526, at \*10; *Miller v. Schupp*, No. 02-21-00107-CV, 2022 WL 60606, at \*1 (Tex. App.—Fort Worth Jan. 6, 2022, no pet.) (mem. op.). We employ the same three-step analysis in reviewing a trial court's ruling on a TCPA motion to dismiss. *See Youngkin v. Hines*, 546 S.W.3d 675, 679 (Tex. 2018).

## III. Discussion

The McShirleys contend that each of Lucas's claims falls within the purview of the TCPA because all are based on or in response to the McShirleys' rights of free speech, petition, and association and that Lucas has failed to establish each element of the challenged claims by clear and specific evidence. In response, Lucas argues that the "illegal act of filing a false police report then lying about a non-existent assault is not protected as free speech" but that, even if the TCPA applies, she has satisfied her burden to establish a prima facie case for each of her causes of action.

### A. Standard of Review

We review de novo a trial court's denial of a motion to dismiss filed pursuant to the TCPA. *USA Lending Grp., Inc. v. Winstead PC*, 669 S.W.3d 195, 200 (Tex. 2023); *Bookout*, 2022 WL 17173526, at \*10; *Miller*, 2022 WL 60606, at \*1–2. In our review, we

8

must consider the pleadings, any evidence that a court could consider on summary judgment, and any submitted affidavits stating the facts on which liability or a defense is based—all of which we review in the light most favorable to the nonmovant. Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a); *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018); *see Maggret v. Ramsey's Rods & Restoration*, No. 02-20-00395-CV, 2021 WL 2253244, at \*2 (Tex. App.—Fort Worth June 3, 2021, no pet.) (mem. op.).

The nonmovant's pleadings are "the best and all-sufficient" evidence of the nature of its claims against the party seeking dismissal under the TCPA. *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017); *Jackson v. Kell Auto Sales, Inc.*, No. 02-21-00106-CV, 2021 WL 5367846, at \*2 (Tex. App.—Fort Worth Nov. 18, 2021, no pet.) (mem. op.).

## B. Application of the TCPA

To carry their burden under the first step of the TCPA analysis, the McShirleys were required to establish that Lucas's legal action is "based on or is in response to" the McShirleys' exercise of the right of free speech, the right to petition, or the right of association. Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). We conclude that the complained-of communications—McShirley's statements to the police and Dagen's statements to the HOA board—implicate the right of free speech and the right to petition.

9

The TCPA defines "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "[m]atter of public concern" includes "a statement or activity regarding . . . a subject of concern to the public." *Id.* § 27.001(7)(C). "Exercise of the right to petition" is defined as "a communication in or pertaining to . . . a judicial proceeding [or] an official proceeding, other than a judicial proceeding, to administer the law." *Id.* § 27.001(4)(A)(i), (ii). An "[o]fficial proceeding" is "any type of administrative, executive, legislative, or judicial proceeding that may be conducted before a public servant." *Id.* § 27.001(8). "Exercise of the right to petition" also includes "a communication that is reasonably likely to encourage consideration or review of an issue by a . . . governmental body or in another governmental or official proceeding." *Id.* § 27.001(4)(C).

It is well settled that the commission of a crime is a matter of public concern under the TCPA. *See Miller*, 2022 WL 60606, at *2 (stating that "[p]ublic-concern matters include statements regarding the commission of a crime"); *Kadow v. Grauerholz*, No. 02-20-00044-CV, 2021 WL 733302, at *3–4 (Tex. App.—Fort Worth Feb. 25, 2021, no pet.) (mem. op.) (holding statement alleging that plaintiff "[wa]s being criminally investigated" involved matter of public concern); *see also Garcia v. Semler*, 663 S.W.3d 270, 281 (Tex. App.—Dallas 2022, no pet.) (similar); *cf. Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) (recognizing that the "commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions" are matters of public concern). Accordingly, the complained-of communications are

10

public-concern matters implicating the McShirleys' exercise of the right of free speech. *See Lyden v. Aldridge*, No. 02-23-00227-CV, 2023 WL 6631528, at *3 (Tex. App.—Fort Worth Oct. 12, 2023, no pet.) (mem. op.) (holding TCPA applies to claim based on defendant's loudly accusing plaintiff, in a busy restaurant, of pedophilia); *Sunchon Yu v. Sun Joo Koo*, 633 S.W.3d 712, 722 (Tex. App.—El Paso 2021, no pet.) ("[T]o the extent [plaintiff's] claims are predicated upon [defendant's] statements to any third party . . . concerning either the alleged sexual assault or [defendant's] reporting of it to the police, we find they are based on or in response to [defendant's] exercise of her right of free speech."); *Cal. Com. Inv. Grp., Inc. v. Herrington*, No. 05-19-00805-CV, 2020 WL 3820907, at *3 (Tex. App.—Dallas July 8, 2020, no pet.) (mem. op.) (similar).

Moreover, Lucas's petition unequivocally states that the McShirleys "accused [Lucas] of criminal conduct." *See Hersh*, 526 S.W.3d at 467 ("When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more."). Indeed, Lucas has consistently maintained that the McShirleys accused her of committing a crime in their statements to the police and to the HOA board, attesting that the McShirleys' assault allegations "caused [her] to be arrested for a felony" and asserting that the McShirleys filed a "false criminal complaint" against her and then engaged in "widespread defamation regarding that false police report." By taking the position that the alleged communications at the heart of this lawsuit constitute the commission of a crime, Lucas has conceded that they involve a matter

of public concern and, thus, that her lawsuit falls under the purview of the TCPA. *See Lyden*, 2023 WL 6631528, at \*3; *Miller*, 2022 WL 60606, at \*2; *Kadow*, 2021 WL 733302, at \*3–4; *see also Garcia*, 663 S.W.3d at 281; *cf. TX Far W., Ltd. v. Tex. Invs. Mgmt., Inc.*, 127 S.W.3d 295, 307 (Tex. App.—Austin 2004, no pet.) ("It is well established that 'assertions of fact . . . in the live pleadings of a party are regarded as formal judicial admissions.'" (quoting *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001))).

McShirley's statements to the police also implicate the right to petition under the TCPA. *See Herrington*, 2020 WL 3820907, at \*3 (holding that reporting crimes to police implicates right to petition); *Buckingham Senior Living Cmty., Inc. v. Washington*, 605 S.W.3d 800, 807 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("When a person interacts with the police to report perceived wrongdoing, that person is exercising the[] right to petition, as that right is defined in the TCPA."); *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at \*1 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.) (citing *Murphy USA, Inc. v. Rose*, 12-15-00197-CV, 2016 WL 5800263, at \*3 (Tex. App.—Tyler Oct. 5, 2016, no pet.) (mem. op.)).

Lucas contends—without any support—that the "illegal act of filing a false police report then lying about a non-existent assault" is not subject to the TCPA. But the complained-of communications are protected by the TCPA regardless of any alleged falsity of the police report. *See Walgreens v. McKenzie*, 676 S.W.3d 170, 175 (Tex. App.—Houston [14th Dist.] 2023, pet. filed); *Graves v. Evangelista-Ysasaga*, No. 14-22-

12

00137-CV, 2023 WL 370589, at *4 (Tex. App.—Houston [14th Dist.] Jan. 24, 2023, pet. denied) (mem. op.) (holding statement to law enforcement regarding alleged sexual assault, whether true or false, involved commission of crime—a matter of public concern—for purposes of the TCPA, "given that both sexual assault and making a false police report are crimes"); *Robert B. James, DDS, Inc. v. Elkins*, 553 S.W.3d 596, 609 (Tex. App.—San Antonio 2018, pet. denied) (recognizing statements to police, even if false, implicate the right to petition under the TCPA); *Murphy USA*, 2016 WL 5800263, at *3 (similar); *see also Sunchon Yu*, 633 S.W.3d at 722 ("Incidentally, making a false police report . . . is also a crime."). Indeed, the issue of falsity is addressed in determining whether Lucas has met her burden under the second step of the TCPA analysis.

Because Lucas's claims are based on and in response to the McShirleys' exercise of the right of free speech and the right to petition, we conclude that the McShirleys satisfied their burden to show that the TCPA applies to Lucas's causes of action. We need not address the McShirleys' argument that the complained-of communications are also protected as an exercise of the right of association. *See* Tex. R. App. P. 47.1.

## C. Prima Facie Case

Having concluded that the McShirleys satisfied their initial burden to show that the TCPA applies to Lucas's claims, we must determine whether Lucas carried her burden under the second step of the TCPA analysis to establish by clear and specific evidence a prima facie case for each element of her claims.

13

A prima facie case, which is "not a high hurdle," "is the measurement the Legislature selected to distinguish genuine claims from suits brought to harass or silence." *USA Lending Grp.*, 669 S.W.3d at 198. It is the "minimum quantity of evidence necessary to rationally infer that an allegation is true." *Id.* Evidence is "clear and specific" if, "taken at face value," it provides enough detail to show the claim's factual basis. *Id.* at 200, 203. At the TCPA stage, a claim survives if the evidence "is legally sufficient to establish a claim as factually true if it is not countered." *Id.* at 204. Indeed, the TCPA stage is not a battle of evidence; its purpose is to "screen[] out plaintiffs certain to fail." *Id.* at 205.

Although a plaintiff is generally not required to "set out in his pleadings the evidence upon which he relied to establish his asserted cause of action," *Paramount Pipe & Supply Co. v. Muhr*, 749 S.W.2d 491, 494–95 (Tex. 1988); *see* Tex. R. Civ. P. 45, 47, for TCPA purposes, "mere notice pleading—that is, general allegations that merely recite the elements of a cause of action—will not suffice." *Lipsky*, 460 S.W.3d at 590–91. If neither the pleadings nor the evidence provides the requisite details, the party has failed to meet its burden of proof, and the TCPA movant is entitled to dismissal. *Rogers v. Soleil Chartered Bank*, No. 20-19-00124-CV, 2019 WL 4686303, at *7 (Tex. App.—Fort Worth Sept. 26, 2019, no pet.) (mem. op.).

**1. Defamation**

To avoid dismissal under the TCPA, a plaintiff asserting a defamation claim must offer clear and specific evidence of (1) the publication of a false statement of

fact to a third party, (2) that defamed the plaintiff, (3) that was made with the requisite degree of fault, and (4) that caused damages. *Lipsky*, 460 S.W.3d at 593; *see Bedford v. Spassoff*, 520 S.W.3d 901, 904 (Tex. 2017) (citing *Lipsky* and noting that a TCPA nonmovant must provide enough detail to establish the facts of "when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff").

Accusing someone of a crime constitutes defamation per se. *Lipsky*, 460 S.W.3d at 596; *Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *18 (Tex. App.— Fort Worth Mar. 11, 2021, no pet.) (mem. op.) (quoting *Lipsky*). When the statements at issue are defamatory per se, the plaintiff is not required to plead and prove damages. *Lipsky*, 460 S.W.3d at 593 (citing *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 n.7 (Tex. 2014)). Here, the McShirleys' statements accusing Lucas of committing assault are defamatory per se. *See id.* Because the statements thus meet the second and fourth elements, *see Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020), to determine whether Lucas's defamation action survives the TCPA stage, we look for clear and specific evidence of only the first and third elements. *See id.*; *Lipsky*, 460 S.W.3d at 593; *Miller*, 2022 WL 60606, at *3. We conclude that Lucas has presented clear and specific evidence establishing a prima facie case for her defamation claim.

15

### a. False-statement publication

Lucas has provided clear and specific evidence that the McShirleys published a false statement about her. A statement is "published" when it is communicated to a third person who is capable of understanding its defamatory meaning and in such a way that the person did understand its defamatory meaning. *Buckingham Senior Living Cmty.*, 605 S.W.3d at 809; *see Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). The McShirleys do not dispute the publication of their statements to the police and to the HOA board. Moreover, Lucas provided evidence of publication: the warrant for her arrest, a Consolidated Complaint and Probable Cause Affidavit that relayed McShirley's statements to the responding officer, the State's letter of nonprosecution, and the Statement for the Recusal & Censuring of Director Lani Lucas that Dagen read to the HOA board and filed with the HOA secretary for distribution.

Regarding the statement's falsity, Lucas has denied that she ever assaulted McShirley. At the TCPA stage, where one party claims an event occurred and the other claims it did not, a plaintiff's denial can satisfy her burden to present prima facie evidence of falsity. *Bookout*, 2022 WL 17173526, at *16; *Watkins*, 2021 WL 924843, at *10; *see also Van Der Linden v. Khan*, 535 S.W.3d 179, 198 (Tex. App.—Fort Worth 2017, pet. denied) (holding plaintiff met his burden to establish clear and specific evidence of falsity by denying defendant's allegations that he had given money to a terrorist organization). Here, as in *Watkins*, "the clash between the statement that an

16

action occurred and the denial that it did is evidence that the person making the statement spoke falsely." *Watkins*, 2021 WL 924843, at *11.

### b. The requisite degree of fault

The McShirleys contend that because the defamatory statements were initially made to law enforcement and thus qualifiedly privileged, Lucas was required to establish that the McShirleys acted with actual malice. We agree.

Generally, the "requisite degree of fault" depends on whether the person defamed is a private individual or a public figure. *Lipsky*, 460 S.W.3d at 593. "A private individual need only prove negligence, whereas a public figure or official must prove actual malice." *Id.* (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). But if a qualified privilege applies, then even a private individual must prove actual malice rather than mere negligence. *Doe v. Cruz*, No. 04-21-00582-CV, 2023 WL 8246181, at *13 (Tex. App.—San Antonio Nov. 29, 2023, no pet.) (op. on reh'g); *Saks & Co., LLC v. Ya Xi Li*, 653 S.W.3d 306, 314 (Tex. App.—Houston [14th Dist.] 2022, no pet.); *QBE Ams., Inc. v. Walker*, No. 05-20-00439-CV, 2021 WL 1976459, at *8 (Tex. App.—Dallas May 18, 2021, no pet.) (mem. op.) (citing *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995)); *Robert B. James, DDS*, 553 S.W.3d at 610.

A qualified privilege "arise[s] out of the occasion upon which the false statement is published." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015) (quoting *Hurlbut v. Gulf Atl. Life Ins.*, 749 S.W.2d 762, 768 (Tex. 1987)). It is available

to those communicating public-interest information to a public officer or private citizen authorized to take action if the information is true. *Id.* at 655. Criminal activity may be classified as public-interest information, and statements made to law enforcement relating to or reporting a crime are qualifiedly privileged. *Saks & Co.*, 653 S.W.3d at 314; *QBE Ams.*, 2021 WL 1976459, at *8; *Robert B. James, DDS*, 553 S.W.3d at 610 (citing *Pease v. Bembry*, No. 03-02-00640-CV, 2004 WL 1574243, at *2 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.)); *Aldous v. Bruss*, 405 S.W.3d 847, 859 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (citing *Clark v. Jenkins*, 248 S.W.3d 418, 432 (Tex. App.—Amarillo 2008, pet. denied)); *see Writt*, 464 S.W.3d at 654 ("The proper administration of justice requires full and free disclosure of information as to criminal activity both by the public and by participants in judicial proceedings.").

"Once a defendant establishes that a communication is . . . qualifiedly privileged, the plaintiff must then show that the privilege is lost." *Steinhaus v. Beachside Env't, LLC*, 590 S.W.3d 672, 678 (Tex. App.—Houston [14th Dist.] 2019, pet. denied) (first citing *Knox v. Taylor*, 992 S.W.2d 40, 55–56 (Tex. App.—Houston [14th Dist.] 1999, no pet.); and then citing *KBMT Operating Co. v. Toledo*, 492 S.W.3d 710, 714–15 (Tex. 2016)). A qualified privilege is lost if it has been abused, "such as when the statement is made with [actual] malice." *Writt*, 464 S.W.3d at 655; *see Randall's Food Mkts.*, 891 S.W.2d at 646.

Here, the McShirleys, relying on Lucas's petition and evidence in support of her response to the TCPA motion, established that the complained-of

18

communications were qualifiedly privileged. *See Writt*, 464 S.W.3d at 654; *Saks & Co.*, 653 S.W.3d at 314; *QBE Ams.*, 2021 WL 1976459, at *8; *Robert B. James, DDS*, 553 S.W.3d at 610; *Aldous*, 405 S.W.3d at 859. Lucas therefore had to show that the McShirleys acted with actual malice. *See Randall's Food Mkts.*, 891 S.W.2d at 646; *Doe*, 2023 WL 8246181, at *14; *Saks & Co.*, 653 S.W.3d at 314 (citing *Steinhaus*, 590 S.W.3d at 677); *QBE Ams.*, 2021 WL 1976459, at *8; *Robert B. James, DDS*, 553 S.W.3d at 610.

### c. Actual malice shown

"Actual malice" means the complained-of statement was made with knowledge of its falsity or with reckless disregard for its truth. *Lipsky*, 460 S.W.3d at 593. Reckless disregard focuses on the defendant's state of mind; the plaintiff must show that the defendant "entertained serious doubts as to the truth of his [statement]." *Huckabee v. Time Warner Ent. Co. L.P.*, 19 S.W.3d 413, 420 (Tex. 2000) (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S. Ct. 1323, 1326 (1968)). "[A] defendant's state of mind can—indeed, must usually—be proved by circumstantial evidence." *Watkins*, 2021 WL 924843, at *15 (quoting *Forbes, Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 171 (Tex. 2003) (internal quotations omitted)). Purposeful avoidance of the truth is evidence of actual malice, and the defendant's injurious motive is a factor to be considered. *Forbes*, 124 S.W.3d at 171 (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 591 (Tex. 2002)). Thus, evidence that a story has been fabricated may be evidence that the defendant acted with actual malice. *Watkins*, 2021 WL 924843, at *16 (citing *St. Amant*, 390 U.S. at 732, 88 S. Ct. at 1326). The defendant's self-serving protestation of

19

sincerity in making the statement does not negate proof of actual malice. *Bentley*, 94 S.W.3d at 596.

Lucas has presented prima facia proof that the McShirleys acted with actual malice. The fact that the parties' stories are so "at odds" with each other provides evidence supporting an inference of actual malice, particularly when eyewitnesses have contradicted the McShirleys' version of the events. *See id.* (quoting *St. Amant*, 390 U.S. at 732, 88 S. Ct. at 1326); *Bookout*, 2022 WL 17173526, at *19; *Watkins*, 2021 WL 924843, at *15. Indeed, Lucas categorically denies that the alleged February 8, 2022 assault ever took place. She asserts that McShirley lied to the police by fabricating the assault allegation and that Dagen lied when she told the HOA board that Lucas had verbally and physically assaulted McShirley. Three witnesses attested that they had not seen an assault occur and that McShirley did not act or otherwise appear as if he had been assaulted on February 8, 2022. Further, one witness claimed that McShirley had not "show[n] any evidence of any injuries of any kind" and that two days later, she saw him holding a heavy, wrought-iron fence over his head while working at the pool. Moreover, the State ultimately chose not to pursue prosecution. When, as here, the parties have given dramatically opposed versions of events, a plaintiff's claim of falsity is evidence both that the statement was false and that the defendant knew it was false at the time he said it because, if the plaintiff's version is accurate, the event never occurred. *See Bookout*, 2022 WL 17173526, at *19 (citing *Watkins*, 2021 WL 924843, at *17). Thus, in such a situation, actual malice may be inferred. *See id.* ("[A]ctual malice

20

may be inferred if the plaintiff demonstrates that the defamatory statement had no basis in fact, was fabricated by the defendant, or was the product of [his or] her imagination." (quoting *Watkins*, 2021 WL 924843, at *17)); *see also Bentley*, 94 S.W.3d at 596 (holding that evidence that a story has been fabricated may show actual malice).

While an injurious motive is not determinative of actual malice, it is another factor that may be considered. *Bookout*, 2022 WL 17173526, at *19 (citing *Campbell v. Clark*, 471 S.W.3d 615, 629 (Tex. App.—Dallas 2015, no pet.)); *see Bentley*, 94 S.W.3d at 597. Lucas has provided evidence that the McShirleys sought to have Lucas removed from the HOA board and that to do it, they—much like "Director" Wiechmann did against another board member—filed criminal charges against Lucas and then presented those allegations to the board in support of Lucas's removal. HOA member Muhr attested that she believed this is a "tactic" employed by a particular group to "gain control of the board." While Muhr did not identify the McShirleys as part of this group, both she and Dagen appeared to have alluded to the McShirleys' involvement, and Dagen specifically identified a group of board members, including herself, in opposition to Lucas's place on the board. This evidence raises an inference of an injurious motive and, when viewed with the evidence in its entirety, is relevant to the McShirleys' subjective belief regarding whether the statements were true. *Cf. Bookout*, 2022 WL 17173526, at *19 (holding that actual malice may be inferred from evidence that the parties "had a falling out," after which defendant launched a "smear campaign" against plaintiff); *Campbell*, 471 S.W.3d at 632

(upholding actual-malice finding from evidence that defendant published to third parties accusations that plaintiff had helped his nephew avoid prosecution for child molestation). The record therefore supports an inference that the McShirleys acted with actual malice.

Because Lucas has presented clear and specific evidence establishing a prima facie case for her defamation claim and the McShirleys have not established an affirmative defense that would entitle them to judgment as a matter of law,[5] we affirm the trial court's order as it pertains to Lucas's defamation claim.

## 2. Malicious Prosecution

Malicious-prosecution claims exist to protect those unnecessarily subject to criminal proceedings. *Kroger Tex. Ltd. P'ship v. Suberu*, 216 S.W.3d 788, 792 (Tex. 2006). This goal must be offset by public policy considerations that encourage citizens to report crimes that are real or perceived. *Id.*; *All Am. Tel., Inc. v. USLD Comm'ns, Inc.*, 291 S.W.3d 518, 533 (Tex. App.—Fort Worth 2009, pet. denied) ("Claims for malicious prosecution create a tension between the societal interest in punishing

---

[5]Qualified privilege is an affirmative defense against a defamation claim. *Doe*, 2023 WL 8246181, at *13–14; *French v. French*, 385 S.W.3d 61, 73 (Tex. App.—Waco 2012, pet. denied); *see* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d). But the McShirleys asserted the privilege only in the context of the requisite degree of fault. Indeed, they advise this court that we "need not look beyond" the second step of the TCPA analysis, and their supplemental motion to dismiss suggests that they had no burden of proof because the privilege "is established on the face of [Lucas's] petition." Nevertheless, as we have determined, Lucas overcame the privilege by providing evidence that the McShirleys acted with actual malice. *See Writt*, 464 S.W.3d at 655; *Randall's Food Mkts.*, 891 S.W.2d at 646; *Doe*, 2023 WL 8246181, at *14; *Steinhaus*, 590 S.W.3d at 678.

crimes and the individual interest in protection from unjustifiable criminal prosecution; we are therefore constrained to the exact prerequisites for liability when reviewing such claims." (citing *Richey v. Brookshire Grocery Co.*, 952 S.W.2d 515, 520 (Tex. 1997))). The essential elements of a malicious-prosecution claim are (1) the commencement of a criminal prosecution against the plaintiff, (2) causation of the action by the defendant, (3) termination of the prosecution in the plaintiff's favor, (4) the plaintiff's innocence, (5) the absence of probable cause for the proceedings, (6) malice in filing the charge, and (7) damage to the plaintiff. *Richey*, 952 S.W.2d at 517. In a one-page, unsupported argument, McShirley[6] challenges only the element of "malice in filing the charge."

### a. Commencement of a criminal prosecution

Lucas had a criminal prosecution commenced against her for purposes of a malicious-prosecution claim. That the State chose not to pursue prosecution after Lucas was arrested but before she was formally indicted does not negate this factor. *See Warner Bros. Ent., Inc. v. Jones*, 538 S.W.3d 781, 815 (Tex. App.—Austin 2017) (concluding that a criminal prosecution commences when "a person is arrested or a warrant for his arrest (or some other form of process) is issued"), *aff'd*, 611 S.W.3d 1 (Tex. 2020); *French*, 385 S.W.3d at 70 ("[A] formal charge by indictment or information against the plaintiff is not a requirement for a malicious-prosecution

---

[6]It appears from Lucas's pleadings and appellate brief that her malicious-prosecution claim is asserted against McShirley only.

cause of action.”); *Marin Real Estate Partners, L.P. v. Vogt*, 373 S.W.3d 57, 87, 92 (Tex. App.—San Antonio 2011, no pet.) (upholding recovery on malicious-prosecution claim even though plaintiff was ultimately “no billed” by grand jury); *Rust v. Page*, 52 S.W.2d 937, 942 (Tex. App.—Fort Worth 1932, writ dism’d) (concluding that commencement was established when plaintiff had waived service of arrest warrant by turning herself in).

### b. Causation of the action by the defendant

For a plaintiff to show that a defendant caused a malicious prosecution, she must demonstrate that the defendant initiated or procured the prosecution. *All Am. Tel.*, 291 S.W.3d at 533 (citing *Browning–Ferris Indus., Inc. v. Lieck*, 881 S.W.2d 288, 292–93 (Tex. 1994)). A defendant initiates a prosecution when he files formal charges with law enforcement authorities. *Id.* (first citing *Lieck*, 881 S.W.2d at 293; and then citing *Dangerfield v. Ormsby*, 264 S.W.3d 904, 910 (Tex. App.—Fort Worth 2008, no pet.)). A defendant procures a prosecution when his

> actions were enough to cause the prosecution, and but for [the defendant’s] actions the prosecution would not have occurred. [The defendant] does not procure a criminal prosecution when the decision whether to prosecute is left to the discretion of another, including a law enforcement official or the grand jury, unless the person provides information which he knows is false.

*Id.* at 533–34 (quoting *Lieck*, 881 S.W.2d at 293). Here, Lucas showed—through her pleadings, affidavit, and evidence attached to her response to the TCPA motion and by McShirley’s own admission—that McShirley initiated the prosecution when he

filed formal charges against her with the Parker County Sheriff's Department, which led to her arrest. *See id.*

### c. Absence of probable cause for the proceedings

The probable-cause element asks whether a reasonable person would believe under the circumstances that a crime had been committed before criminal proceedings were instituted. *Kroger Tex. Ltd. P'ship*, 216 S.W.3d at 792–93. Courts must presume that the defendant acted in a reasonable manner with probable cause to initiate criminal proceedings. *Id.* at 793. But the plaintiff may rebut this presumption by providing evidence that the motives, grounds, beliefs, and other evidence upon which the defendant acted did not constitute probable cause. *Richey*, 952 S.W.2d at 517. For example, "[e]vidence of motives that undermine the presumption of reasonable belief include prior bad relations . . . or any private motivation to harm." *Smith v. Hammonds*, No. 01-19-00866-CV, 2021 WL 2690867, at *6 (Tex. App.—Houston [1st Dist.] July 1, 2021, pet. denied) (mem. op.) (quoting *S. Tex. Freightliner, Inc. v. Muniz*, 288 S.W.3d 123, 134 (Tex. App.—Corpus Christi–Edinburg 2009, pet. denied)). If the plaintiff rebuts the presumption, the defendant then has the burden of proving the existence of probable cause. *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex. 1983).

Here, as discussed in our analysis of Lucas's defamation claim, Lucas provided evidence showing that McShirley initiated a prosecution against Lucas based on injurious motives and information that did not support a reasonable belief that Lucas

25

was guilty of assault. *See Kroger*, 216 S.W.3d at 794–95; *Smith*, 2021 WL 2690867, at *6 (citing *Muniz*, 288 S.W.3d at 134); *cf. Tranum v. Broadway*, 283 S.W.3d 403, 415–16 (Tex. App.—Waco 2008, pets. denied) (op. on reh'g) (concluding defendant did not have probable cause to bring criminal charges against former business partner when there was evidence defendant had pursued similar charge against a prior business partner under similar circumstances). McShirley failed to—in fact did not attempt to—prove the existence of probable cause in response. Rather, he concedes that he "filed a criminal complaint [that] may or may not have been false."

### d. Malice in filing the charge

The element of malice aids in protecting defendants by negating the natural tendencies of a jury to punish those who, through error but not malevolence, commence criminal proceedings against an individual who is ultimately exonerated. *Kroger*, 216 S.W.3d at 792. Malice, for purposes of malicious prosecution, is defined as "ill will, evil motive, or reckless disregard of the rights of others." *Giang Vu v. Tran*, No. 02-21-00059-CV, 2021 WL 3679245, at *7 n.4 (Tex. App.—Fort Worth Aug. 19, 2021, no pet.) (mem. op.) (quoting *Herrington*, 2020 WL 3820907, at *7). "The absence of probable cause can provide circumstantial evidence of a hostile or malicious motive." *French*, 385 S.W.3d at 69 (quoting *Braneff v. Troutmen*, No. 10-08-00203-CV, 2010 WL 4644495, at *5 (Tex. App.—Waco Nov. 17, 2010, pet. denied) (mem. op.)). Notably, failing to disclose all material information and knowingly providing material

and false information to law enforcement is evidence of malice. *King v. Graham*, 126 S.W.3d 75, 76 (Tex. 2003); *Richey*, 952 S.W.2d at 519.

Here, as with her defamation claim—and pointing to the evidence showing lack of probable cause—Lucas provided clear and specific evidence that McShirley acted with malice in filing the charge against her. Indeed, Lucas categorically alleged in her pleadings and affidavits that McShirley provided false information to law enforcement—conflicting stories from the parties and eyewitness testimony contrary to McShirley's account—and that he had a motive to do so—desire to remove Lucas from the HOA board by employing a "tactic" of filing criminal charges against an HOA member to gain control of the board.

### e. Termination of the prosecution in the plaintiff's favor and the plaintiff's innocence

Lucas also provided evidence that the prosecution against her was terminated in her favor and that she is innocent. Specifically, Lucas provided the State's letter of nonprosecution advising that it would not be pursuing the charges and other evidence indicating that McShirley's allegations were false, including her pleadings, her affidavit denying the allegations, and affidavits from witnesses who were present during her conversation with McShirley on February 8, 2022, and whose versions of the events contradicted McShirley's.

27

**f. Damage to the plaintiff**

Under the TCPA, "the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct." *USA Lending Grp.*, 669 S.W.3d at 202 (quoting *Elliott*, 564 S.W.3d at 847). Thus, a general averment of loss fails to satisfy the TCPA's minimum requirements. *Lipsky*, 460 S.W.3d at 592–93.

As relevant here, reputation damages and mental anguish damages are recoverable in a malicious-prosecution claim. *Bearden v. LeClair*, No. 02-20-00177-CV, 2022 WL 3273598, at *16, *18 (Tex. App.—Fort Worth Aug. 11, 2022, no pet.) (mem. op.); *PNS Stores, Inc. v. Munguia*, 484 S.W.3d 503, 518 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (op. on reh'g);[7] *see* Restatement (Second) of Torts § 670 cmt. A (Am. L. Inst. 1977). Generally, two types of evidence can support an award of reputation damages: direct evidence that "people within the community 'thought less of' the plaintiff" and "evidence of a lost job or business opportunity." *Bearden*, 2022 WL 3273598, at *16 (citing *Mem'l Hermann Health Sys. v. Gomez*, 649 S.W.3d 415, 427–28 (Tex. 2022)). To prove mental anguish damages at trial, a plaintiff's testimony alone can suffice. *Id.* at *18 (citing *Anderson v. Durant*, 550 S.W.3d 605, 619–20 (Tex. 2018)). For example, in *Bearden*, the plaintiff's testimony that in the weeks after his arrest he experienced dry heaving, diarrhea, sleeplessness, and anxiety established

---

[7]We note that *Bearden* and *Munguia* are not TCPA cases; therefore, the evidentiary sufficiency in those cases required a higher standard of proof than Lucas has here, at the TCPA stage.

some evidence of compensable mental anguish resulting from malicious prosecution. *Id.* And in *Munguia*, the appellate court concluded that there was factually sufficient evidence to support a finding of past mental anguish damages based on the following:

> Munguia testified to past mental anguish in the form of fear and despair that, unlike his recovery from prior significant medical problems, he would not recover from . . . . Munguia also testified that his personality ha[d] changed for the worse; he sometimes bec[ame] irritable, angry, and crie[d] for no reason, and he [wa]s unable to shake off the negative feelings. Munguia's wife testified that Munguia [was] no longer upbeat and happy and 'his heart [was] not in anything.'

484 S.W.3d at 518.

Here, Lucas's pleadings describe several ways in which the malicious prosecution allegedly harmed her. She alleges, among other damages, damage to her reputation, loss of association and friendship, public humiliation in the form of gossip and social media posts, and costs for her criminal defense. She attested that her community and colleagues had lost faith and trust in her. Additionally, Lucas pled mental anguish damages such as worry, pain, and stress, and in her affidavit, she identified conditions that she never had prior to the prosecution: headaches, anxiety, sleeplessness, and high blood pressure. Viewing the pleadings and affidavits in the light most favorable to Lucas, these alleged damages are sufficient to meet her burden under the second step of the TCPA analysis. *See USA Lending Grp.*, 669 S.W.3d at 202; *Bearden*, 2022 WL 3273598, at *16, *18; *Munguia*, 484 S.W.3d at 518; *see also Cuba v. Pylant*, 814 F.3d 701, 713 (5th Cir. 2016) (citing Texas case law and holding plaintiff was not required to prove up damages at TCPA stage).

29

We conclude that Lucas has presented clear and specific evidence establishing a prima facie case for her malicious-prosecution claim. Accordingly, we affirm the trial court's order as it pertains to that claim.

### 3. Conspiracy

A claim for conspiracy requires a showing that (1) a defendant was a member of a combination of two or more persons; (2) the combination's objective was to accomplish either an unlawful purpose or a lawful purpose by unlawful means; (3) the members had a meeting of the minds on the object or course of action; (4) one of the members committed an unlawful, overt act to further the object or course of action; and (5) the plaintiff suffered injury as a proximate result of the wrongful act. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017). An actionable conspiracy exists only to those parties who are aware of the intended harm or proposed wrongful conduct at the outset of the combination or agreement. *Id.*

Civil conspiracy is not an independent tort. *Agar Corp. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141–42 (Tex. 2019). Rather, a civil conspiracy claim is a derivative tort that "survives or fails alongside" the underlying tort alleged. *Id.* at 141; *Mignogna v. Funimation Prods., LLC*, No. 02-19-00394-CV, 2022 WL 3486234, at *15 (Tex. App.—Fort Worth Aug. 18, 2022, pet. denied) (mem. op.) Thus, if the trial court did not err by refusing to dismiss the underlying tort, then it likewise did not err in refusing to dismiss the conspiracy claim. *See Perales v. Newman*, No. 02-23-00095-CV, 2023 WL 5615893, at *21 (Tex. App.—Fort Worth Aug. 31, 2023, pet. denied)

30

(mem. op.) (citing *Mignogna*, 2022 WL 3486234, at *15); *Warner Bros. Ent.*, 538 S.W.3d at 814 (citing *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) (orig. proceeding) (op. on reh'g)).

Our examination of Lucas's conspiracy claim reveals that it is derivative of her defamation claim. In her petition, she alleges that the McShirleys engaged in a conspiracy to defame her. She therefore seeks to hold the McShirleys liable for her underlying defamation claim arising from the "false" police report and related statements to the HOA board. *See Agar Corp.*, 580 S.W.3d at 141–42. Because we have determined that the trial court did not err by denying the McShirleys' TCPA motion to dismiss as it pertains to Lucas's defamation claim, we likewise determine that it did not err by denying the motion as to Lucas's conspiracy claim.

Accordingly, we affirm the trial court's order as it pertains to Lucas's conspiracy claim.

### 4. IIED

To avoid dismissal of an IIED claim under the TCPA's second step, the nonmovant must present clear and specific evidence of the claim's essential elements: (1) the plaintiff is a person; (2) the defendant acted intentionally or recklessly; (3) the plaintiff suffered severe emotional distress; (4) the defendant's conduct was extreme and outrageous; (5) the defendant's conduct proximately caused the plaintiff's emotional distress; and (6) no alternative cause of action would provide a remedy for the severe emotional distress caused by the defendant's conduct. *Lyden*, 2023 WL

6631528, at *6; *see Hersh*, 526 S.W.3d at 468; *Martinez v. English*, 267 S.W.3d 521, 529–30 (Tex. App.—Austin 2008, pet. denied); O'Connor's Texas Causes of Action ch. 14, § 1.1 (2022).

IIED is considered a "gap-filler" tort that was "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman–La Roche, Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998)). IIED's "clear purpose" is "'to supplement existing forms of recovery by providing a cause of action for egregious conduct' that might otherwise go unremedied." *Id.* (quoting *Johnson*, 985 S.W.2d at 68). It "simply has no application when the 'actor "intends to invade some other legally protected interest," even if emotional distress results.'" *Id.* (quoting *Johnson*, 985 S.W.2d at 67). Accordingly, "[w]here the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available." *Id.*; *see Martinez*, 267 S.W.3d at 530–31.

Lucas has not presented evidence of a prima facie case on each essential element of her IIED claim. She did not allege in her petition or in her response to the TCPA motion any factual basis for her IIED claim other than that asserted for her defamation and malicious-prosecution claims. The gravamen of Lucas's IIED complaint was therefore the same as her defamation and malicious-prosecution claims. *See Hoffmann–La Roche*, 144 S.W.3d at 447; *Lyden*, 2023 WL 6631528, at *6.

Because Lucas's IIED claim depends on the McShirleys' alleged slanderous statements and criminal complaint, Lucas has another remedy, and there is no "gap" to fill. *See Lyden*, 2023 WL 6631528, at *6 (holding plaintiff did not meet his step-two burden for his IIED claim because its factual basis was the same as that of his defamation claim); *Patel v. Patel*, No. 14-18-00771-CV, 2020 WL 2120313, at *10 (Tex. App.—Houston [14th Dist.] May 5, 2020, no pet.) (mem. op.) (holding plaintiff's IIED claim "fail[ed] because [IIED] is a gap-filler tort and there [was] no gap to fill").

Accordingly, we reverse the trial court's order denying the McShirleys' TCPA motion to dismiss as it pertains to Lucas's IIED claim and render judgment dismissing that claim.

### 5. Negligence and Gross Negligence

Lucas pleaded that the McShirleys "made, published[,] and printed the false and defamatory statements [about the alleged assault] by negligently failing to ascertain or state the truth." The McShirleys contend that Lucas's negligence claims "are nothing more than a rehash of her slander claims."

To establish negligence, Lucas had to establish a duty, a breach of that duty, and damages proximately caused by the breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). The existence of a duty is a threshold inquiry and a question of law. *Id.* In response to the TCPA motion, Lucas addressed the element of duty in a single, conclusory assertion: "The defendants had a duty to exercise ordinary standard of care to prevent plaintiff's injury." She has cited no case law, and we have found none,

33

establishing a duty in negligence to refrain from falsely accusing someone of committing a crime. Rather, false accusations of criminal conduct are addressed by defamation, false-imprisonment, and malicious-prosecution claims. *Walgreens*, 676 S.W.3d at 179 (first citing *Randall's Food Mkts.*, 891 S.W.2d at 646; then citing *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985); and then citing *Richey*, 952 S.W.2d at 517).

Lucas's negligence claim is based on the same facts as her defamation and malicious-prosecution claims and seeks to recover the same alleged damages. She cannot avoid the strict requirements of her defamation and malicious-prosecution claims by recasting them as negligence claims. *See, e.g.*, *id.* at 180–81; *Charlie Thomas Chevrolet, Ltd. v. Martinez*, 590 S.W.3d 9, 16 (Tex. App.—Houston [1st Dist.] 2019, no pet.) ("[A] plaintiff cannot circumvent the stringent standards for recovery of . . . false imprisonment and malicious prosecution by pleading other claims based on the same facts."); *Murphy USA*, 2016 WL 5800263, at *7 (similar); *Delese v. Albertson's, Inc.*, 83 S.W.3d 827, 830 (Tex. App.—Texarkana 2002, no pet.) (similar); *Rodriguez v. Wal-Mart Stores, Inc.*, 52 S.W.3d 814, 821 (Tex. App.—San Antonio 2001) (declining to hold a duty exists outside of malicious prosecution and defamation to refrain from falsely accusing someone of a crime), *rev'd in part on other grounds*, 92 S.W.3d 502 (Tex. 2002); *Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. App.—Austin 1997, no writ) (similar); *see also Joseph v. Walmart, Inc.*, No. 3:20-CV-00062, 2020 WL 7061873, at *6 (S.D. Tex. Nov. 17, 2020) (rejecting argument that defendant owed a duty to refrain from falsely

accusing plaintiff of a crime and citing *Wal-Mart Stores, Inc. v. Medina*, 814 S.W.2d 71, 73 (Tex. App.—Corpus Christi–Edinburg 1991, writ denied)), *report and recommendation adopted*, No. 3:20-CV-00062, 2020 WL 7059841 (S.D. Tex. Dec. 2, 2020). The trial court thus erred by denying the McShirleys' TCPA motion to dismiss Lucas's negligence claim.

The existence of a duty of care is also an element of a gross negligence claim. *AEP Tex. Cent. Co. v. Arredondo*, 612 S.W.3d 289, 298–99 (Tex. 2020) (citing *Ford Motor Co. v. Miles*, 967 S.W.2d 377, 390 (Tex. 1998) (Gonzalez, J., concurring), for proposition that negligence and gross negligence are not separable causes of action but are inextricably intertwined). Indeed, "[o]rdinary negligence is a prerequisite to a finding of gross negligence." *Walgreens*, 676 S.W.3d at 180 (first citing *City of Waco v. Kirwan*, 298 S.W.3d 618, 623 (Tex. 2009); and then citing *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 178 (Tex. App.—Houston [14th Dist.] 1994, writ denied)); *see Aikens v. Dueling*, No. 02-21-00320-CV, 2022 WL 3651976, at *6 (Tex. App.—Fort Worth Aug. 25, 2022, no pet.) (mem. op.). Because the McShirleys owed no duty to Lucas to refrain from negligently accusing her of committing assault, her gross negligence claim is also precluded.

Accordingly, we reverse the trial court's order denying the McShirleys' TCPA motion to dismiss as it pertains to Lucas's negligence and gross negligence claims and render judgment dismissing those claims.

## IV. Conclusion

We conclude (1) that the TCPA applies to Lucas's claims and (2) that Lucas presented clear and specific evidence of each element of her defamation, malicious-prosecution, and conspiracy claims but failed to do so with respect to her IIED, negligence, and gross negligence claims. We affirm the trial court's order denying the McShirleys' TCPA motion to dismiss as it pertains to Lucas's defamation, malicious-prosecution, and conspiracy claims. We reverse the trial court's order as to Lucas's IIED, negligence, and gross negligence claims and render judgment dismissing those claims only. We remand this matter for further proceedings consistent with this opinion and Section 27.009(a). Tex. Civ. Prac. & Rem. Code Ann. § 27.009(a).

/s/ Wade Birdwell

Wade Birdwell
Justice

Delivered: March 7, 2024